Union Bank *v.* Mayor, &c. of New York.

THE UNION BANK, IN THE CITY OF NEW YORK *vs.* THE MAYOR, &C. OF THE CITY OF NEW YORK.

A competent authority, having jurisdiction over the subject of assessment for purposes of taxation, and over the plaintiffs' property, assessed the plaintiffs for personal property. The plaintiffs complained and applied to the courts for redress. Before the final decision in the Court of Appeals, the officer having charge of the collection of taxes gave a notice to the plaintiffs, requiring payment, and stating that in the event of non-payment, a warrant would be issued, to collect the same. The plaintiffs then paid the assessment. There being no warrant, no seizure, no threatened seizure, no payment of money to free its property from the possession of another, no ignorance of facts; *Held* that this was a purely voluntary payment, and no action would lie to recover the same back.

Nor can such an action be maintained against the city corporation of New York, even if the payment be coercive, taxes being levied and collected under state authority, and the money collected being finally applied by state law.

APPEAL from a judgment rendered at a special term, sustaining a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The action was brought to recover the sum of $21,916.81, that being the amount of a tax assessed

against the plaintiffs in the year 1862. The plaintiffs claimed exemption from taxation on the ground that their capital stock, upon which the assessment was made, was invested in the stocks of the United States. The plaintiffs' claim of exemption was overruled by the tax commissioners, and thereupon they obtained a writ of certiorari under section 20, of the Laws of 1859, to review the decision of the commissioners in that regard. The Supreme Court, at general term, modified the assessment of the plaintiffs by deducting the sum of $25,000 from the amount upon which they had been assessed. The plaintiffs appealed from this decision to the Court of Appeals, claiming that they could not be legally assessed upon any portion of their capital stock. Pending the appeal to the Court of Appeals, the receiver of taxes served a notice upon the plaintiffs, that unless the tax assessed against them was paid, a penalty by way of interest would be imposed, and a warrant issued for the collection of the tax and interest. The plaintiffs thereupon paid the amount of tax to the receiver of taxes, and brought the present action against the city corporation to recover it back.

*W. Howard Wait* and *Pierpont Isham*, for the appellants. I. The plaintiffs claim the right to recover the money, as it was taken under those circumstances which the law pronounces compulsory, and to which the defendants have no claim, after the reversal of the judgment of the Supreme Court and the adjudication of the commissioners of taxes and assessments, whereby the assessment and tax were declared illegal and void. It was not a *voluntary payment,* nor made on a *compromise of a disputed right.* 1. The general rule, which in some instances has been applied to the payment of taxes, is not questioned: "That where there is *bona fides,* and money is voluntarily paid, with full knowledge of all the facts, though there be no debt, still it cannot be recovered back." There must be "*good faith*"

to make a voluntary payment binding; for if the party knew the claim was groundless, it is a fraud, and the money may be recovered back. (*Duke de Cadaval* v. *Collins*, 4 *Ad. & Ellis*, 858.) So if the parties acted under a mutual mistake of facts, the money may be recovered. (*Mowatt* v. *Wright*, 1 *Wend.* 355, 362.) It is obvious, however, the application of that general rule to this case decides nothing; it furnishes no aid in coming to a proper result; for the question still remains, when is the payment voluntary? and under what circumstances does the law say it is compulsory and taking an undue advantage of a party's situation? Upon these inquiries, the case, to a great extent, depends. In the case of *Kelly* v. *Solari*, (9 *M. & Wels.* 54,) Baron Parke has given the application of that rule in definite language. He says: "*If the money was paid intentionally, without reference to the truth or falsehood of the fact, the plaintiff meaning to waive all inquiry into it, and that the person receiving shall have the money at all events, whether the fact be true or false, the latter is entitled to retain it.*" The same rule applies in equity. (3 *Lead. Cas. in Eq.* 425.) It is a question of intention, and whatever that is, the court will carry into effect, in this, as in all other contracts and dealings of parties. In all cases of voluntary payments, or of payments in compromise of matters in dispute, a final compromise is intended by the party paying and the party receiving the money; a waiver and abandonment of the controversy, and of the rights and claims growing out of it, and it is a bar to any subsequent litigation of the matter. If the payment in this case was voluntary, it would have arrested the further proceedings on the *certiorari*, in the appeal from the Supreme Court to the Court of Appeals. That such was not the intention or understanding of either of the parties is evidenced by the fact that, after the money had been received, both parties continued that litigation until the assessment

was set aside and declared illegal and void. 2. The facts on which this money was paid and received are stated in the complaint, and by the demurrer are admitted to be true. It is believed that not one element exists which brings this case within the application of voluntary payments. The commissioners of taxes and assessments for the year 1862 assessed the plaintiffs on their United States bonds and other like securities which they held as capital, in the sum of $1,288,624, and contrary to repeated objections and denials of their right and authority so to do, entered that amount on their "annual records." On the removal of those proceedings to the Supreme Court "for revision and correction," the adjudication of the commissioners of taxes, with some modification, was affirmed, and the amount of the assessment on that property was fixed at $1,263,654, which was the amount on which the tax was finally made. From that judgment the plaintiffs appealed to the Court of Appeals. The appeal did not suspend the power of the commissioners of taxes, nor that of the receiver of taxes to enforce the payment of the tax on that assessment when corrected in conformity with the judgment of the Supreme Court.

The adjudication of the commissioners of taxes, and of the Supreme Court on that assessment were judicial acts, and unappealed from were conclusive in fixing the amount of the assessment and tax against the plaintiffs. (*Vose* v. *Willard,* 47 *Barb.* 320.) When the assessment roll was perfected and passed into the hands of the receiver of taxes, it had the character and conclusiveness of a judgment, upon which a warrant or final process, like an execution upon a judgment, could issue to enforce its collection and payment. The receiver of taxes, who alone, as the proper officer of this municipal corporation, had the power to enforce the payment of that tax, and take the required steps for that purpose, caused notices to be given, that unless the tax was paid, the penalty authorized by the

act would be imposed, and a warrant issued for the payment of the penalty and tax, and the plaintiffs' property seized and applied for its payment. These notices, the defendants claim, were but mere demands or requests for the payment of the tax, and do not destroy the voluntariness of the payment. It is true, they were demands for that payment, and by the only person authorized to make and enforce them; and they are something more; they were coercive steps, and under the statute were necessary to lay the foundation for issuing the warrant and making a levy upon the plaintiffs' property. Without those notices no warrant could have been issued. As coercive measures, they have the same character and importance as making the assessment itself, and issuing the warrant. It is further stated and admitted, that these plaintiffs, by the judgment aforesaid, by the threats and statements of the receiver, and by the fear that the amount of the tax and penalty would be collected by the defendants and their agents, and the property of the plaintiffs taken and sacrificed therefor, were compelled and forced to relinquish the money to the amount of that tax, which was received, and has ever since been retained by the defendants.

In determining from these facts, whether this was a voluntary payment or not, we have only to apply the legal test as given by Baron Parke. (9 *M. & Wels.* 54.) Was the money intentionally paid without reference to the fact whether they were liable for that tax or not? Did the plaintiffs, in yielding up that money, waive all inquiry as to the fact of their liability for that tax, when at that time and during the whole period, they were prosecuting their suit, and resisting their liability in all the courts, from the adjudication of the tax commissioners to the Court of Appeals? Did the plaintiffs intend that the corporation should have that money at all events, whether they were liable upon that tax or not? It would seem that the mere statement of facts as they are admitted to be true, carries

with it the answer, that no voluntary payment or compromise was intended by the plaintiffs, or so understood by the defendants; and that no such legal result can follow, in the application of the rule as given by Baron Parke. 3. It is not necessary to render the payment of money compulsory or involuntary, that there should be a forcible resistance, nor that the party should remain passive and permit a levy and sale of his property on the warrant. It is sufficient that the money is paid *reluctantly in consequence of an illegal demand, and to protect his property from a levy and sale.* In *Maxwell* v. *Griswold,* (10 *How. U. S.* 241,) the court observed that: "In order to constitute an involuntary payment so that the money may be recovered back, it need not be made under actual violence or physical force; it is enough that the party *pays reluctantly* in consequence of an illegal demand, and without being able to regain possession of his property except by submitting to the payment." The principle is the same, if the money is paid to enable the owner to retain the possession of his property, for the object in getting it is to retain it for use. The same general principle is sustained in *Am. Ex. Ins. Co.* v. *Britton,* (8 *Bosw.* 148.) In *Boston Glass Co.* v. *Boston,* (4 *Metc.* 181,) it was held that payment of taxes to a collector *who had a tax bill and warrant* in the form prescribed by law, is to be regarded as a *compulsory payment,* and if such taxes were assessed without authority, they may be recovered, although the party made no protest before payment. The obvious reason of the rule is clearly stated in *Preston* v. *Boston,* (12 *Pick.* 7.) It arises from the power and authority placed in the hands of a collector of taxes by virtue of his warrant to levy directly upon the property * * in default of the payment of the taxes. Such warrant is in the nature of an execution. * * * Such being the state of the case, the payments made to a collector of taxes may be considered compulsory, and made under such circumstances as will authorize the party giving the money .

to recover back the same if the tax was illegally assessed. The case in 12 *Pick.* 7 is very similar to this. In that case, as in this, the assessment had been perfected, and it, with a warrant, had been placed in the hands of a collector. In that case, as in this, the collector notified the party of the tax, and stated that unless the tax was paid the warrant would be duly levied. Was the party bound in that case to make resistance to its collection, or was he under obligation to remain passive, and witness the levy of the warrant and the sacrifice of his property on its sale, or having objected to the assessment, and denying the right of the defendants to make the collection, was he at liberty to pay the tax and seek his remedy in an action to recover it back? These inquiries are answered by Ch. J. Shaw, who observed that, "Under the circumstances, we think it cannot be considered a voluntary payment, but a payment made under such circumstances of constraint and compulsion, that on showing that he was not liable, he may recover it back in this action, from the defendants *into whose treasury it has gone.*" The same doctrine was held in *Jainer* v. *Egremont,* (3 *Cush.* 572.) The assessment was held illegal. Dewey, J. observed: "The facts stated in the case show that the *collector demanded payment* of the plaintiff, and *threatened to enforce the same by legal process.* A payment to a collector of taxes under such circumstances is not that voluntary payment of a disputed demand that precludes the party thus paying from opening the question of the right to enforce such payment in an action to recover back the money thus paid." These cases do but commend themselves to the judgment and candor of intelligent and business men. In this state, where several decisions have been made on the subject of voluntary payments of taxes, the doctrine as held in the Supreme Court of the United States and Massachusetts has been recognized. In the case *The Hudson River Railroad Co.* v. *Marsh,* (2 *Kern.* 309,) the payment was held voluntary.

The collector of one county having a tax list and warrant, went into another county to the office of the company, and requested them to pay the tax, which they did. The company afterwards ascertaining that the assessment was illegal, sought to recover it back. It was held that no recovery could be had. The court observed that "The warrant gave no authority to collect the tax by compulsion. It was only a demand of voluntary payment, and was not accompanied *in fact or apparently with a power to enforce payment.*" Whatever power the officer may have had in the county where he lived, he had none where and when the money was paid, as he was out of his jurisdiction. That no misapprehension might arise in the application of that case to others, Johnson, J. was careful to observe that "It does not stand upon the same ground as payments made to release property from seizure under process, either actually made, or about to be made." In *Forrest* v. *The Mayor, &c. of New York,* (13 *Abb.* 352,) the assessment was made in 1857, paid in 1858, and vacated in 1859. After the assessment, no attempt was ever made to collect or enforce its payment, no warrant was ever threatened to be levied, nor any demand or request for its payment ever made. The *plaintiff wishing to use the land by way of sale and mortgage,* paid the assessment under protest, and it was held a voluntary payment. In other words, *the desire to sell and mortgage the premises* did not, as the court said, render the payment compulsory, and that in this respect there was a distinction between real and personal estate. The protest did not render the payment any the less voluntary. It is obvious that the cases are too unlike in principle and facts for application. The case of *Fleetwood* v. *The Mayor, &c.* (2 *Sandf.* 478,) is of a similar character. Instead of contesting the legality of the assessment, the money was paid by the party upon a negotiation to raise money upon the premises by mortgage, *and upon the requirements, not of the city authorities,*

*but of the party loaning the money,* as the matter was re-
garded as a cloud upon the title.   The court held that the
assessment created no cloud, and that whatever rule was
applied to personal property on such payment, the rule in
relation to involuntary or coercive payments, and the
right to recover back money so paid, has no application
to real estate.   In the case of *Sandford* v. *The Mayor, &c.*
(33 *Barb.* 147,) it was held that the assessment was legal,
and that the proceedings in making the assessment and
confirmation thereof were in due form of law.   The com-
missioners' of taxes had jurisdiction over the person and
property assessed, as neither were exempt from state taxa-
tion.   The objections urged, it was held, were waived by
not insisting upon them in the course of the proceeding
in making the assessment, and were not sufficient to render
the assessment illegal or void.   But if it were not so, the
payment of it without objection, without the notice re-
quired by statute, and without any intimation that pay-
ment would be enforced by levy on property, rendered it
a voluntary payment, and any subsequent misappropriation
of the money gave no right to recover it back.   There
can be no application of that case to this, where the pro-
ceedings, in making this assessment upon property exempt
from state taxation, were without the jurisdiction of the
commissioners of taxes, and were resisted until they were
held to be illegal and void, and when payment was en-
forced by the collector duly armed with a warrant, and
threatening to levy the same on their property.   (45 *Barb.*
*Rep.* 321.)   How far payments made under the mere
threat that a suit would be commenced to recover the
money back, may be regarded as compulsory, the court
are not now called upon to consider; but the authorities
are uniform in holding, that when payment is made to
one, who is armed with a warrant or other final process,
and who has levied or who threatens to levy the same on
property to enforce it, the payment is regarded as involun-

tary and compulsive, and if the claim or assessment is illegal, the money may be recovered back. Of that character is also the case of *Wisner* v. *Bulkley*, (15 *Wend.* 321,) in which it was held that an action lies to recover back money paid on an execution issued on a satisfied judgment. Bronson, J. observed : " That this was not a voluntary but a compulsory payment, under color of legal process. The plaintiff *paid the debt to save his goods from sale on the execution.*" In this case, the plaintiffs *paid the tax to save their goods from sale on a warrant*—the judgment and the tax being alike illegal.

In relation to these various cases which have been considered, and which are relied upon to sustain this defense as a voluntary payment, it is obvious they involve no principles which have any application to this case ; and while the payments in those cases were held voluntary, the courts were careful to except from the rule of voluntary payments that class of cases where the assessment was void, and where in the language of Johnson, J. (2 *Kern.* 309,) " the payments were made to release property from seizure under process, either already actually made, or about to be made."

The right of the plaintiffs in this case to recover the money paid on that illegal and void assessment rests, therefore, upon those adjudicated cases and general principles which have met with general application and approval, that when one is compelled to pay money upon an illegal claim to obtain the possession, or to protect himself in the use and enjoyment of his property from illegal detention and seizure, the money so paid may be recovered back, as having been obtained under those circumstances which the law pronounces a payment by compulsion, and which the party *ex æquo et bono* ought to refund. (*Shaw* v. *Woodcock*, 7 *Barn & Cress.* 73. *Maxwell* v. *Griswold*, 10 *How. U. S.* 241. *Atlee* v. *Backhouse*, 3 *Mees. & Welsb.* 633, 649. *Preston* v. *Boston*, 12 *Pick.* 7. *Chase* v. *Dwinal*, 7

*Maine Rep.* 134.)   4. The fact admitted by the demurrer, that the receiver of taxes notified the plaintiffs that the penalty imposed by the act would be demanded and its payment enforced by warrant, unless the tax was paid, renders the payment compulsory. This was the direct ruling in *Maxwell* v. *Griswold,* (10 *How. U. S.* 242.)   In that case, an importer proposed to enter his goods at the invoice price, being the sum actually paid; but the collector insisted that they should be entered at the value at the time of shipment, which would have occasioned such an addition to the invoice price *as would have subjected the importer to a penalty,* or that the importer should voluntarily make the addition to the invoice price, and so escape the penalty; the importer chose the latter alternative, and paid the excess under protest.   It was held that such payment was involuntary and coercive, and that the money might be recovered back.

II. But, independent of the question whether the payment of that assessment was voluntary or coercive, the right of the plaintiffs to recover that money in this action arises from the adjudication of the Court of Appeals reversing the judgment of the Supreme Court under which the money was paid, and vacating the assessment of the commissioners of taxes.

The adjudication of the commissioners of taxes in determining the validity of the assessment was a judicial act, and when the assessment roll was perfected, confirmed and passed by the supervisors to the receiver of taxes with a warrant for its collection, it had the nature and character of a judgment at law. The judgment of the Supreme Court affirming the assessment on that property, determined the amount of that assessment upon which the tax was made, and, unappealed from, is as conclusive as any judgment at law.   The only difference in the two cases is in the manner in which the rights of suitors are brought before the court for judicial determination.   But

when they are thus brought, in the manner provided by law, the adjudication upon those rights is as conclusive in one case as in the other, and each is enforced by final process. (20 *How. Pr.* 302, *and cases before cited. Vose* v. *Willard,* 47 *Barb.* 320.) The rule is well settled in this state, that "when money has been collected or received upon a judgment valid at the time, and binding between the parties, and that judgment is reversed, the money may be recovered back, although the money may not have been coerced by actual duress." "*The law, in such case, will imply a promise of repayment.*" (*Bank of U. S.* v. *Bank of Washington,* 6 *Peters,* 8. *Clark* v. *Pinney,* 6 *Cowen,* 297. *Sturges* v. *Allis,* 10 *Wend.* 355. *Garr* v. *Martin,* 20 *N. Y. Rep.* 306.)

It is immaterial, therefore, whether this money was paid voluntarily or by coercive measures. The assessment on which it was obtained has been held to be illegal and void, and the judgment of the Supreme Court on which it was paid has been reversed. The defendants have taken the property of the plaintiffs without compensation, and still retain it without excuse, legal, equitable or in good conscience. It would seem that the right to recover it is a simple truism.

III. It is insisted that the defendants are not liable in this action, even if in all other respects the plaintiffs are entitled to recover back the money, as the assessment and tax were imposed and collected under the authority of the statutes of the state, and not at the instance and direction of the defendants, and that they had no part or agency in its imposition or collection. The statutes directing the manner in which taxes are to be assessed, collected and paid, require the concurrence and action of the commissioners of taxes and assessments, the board of supervisors, the receiver of taxes, comptroller and chamberlain, to each of which, distinct and specific duties are

assigned. (*Laws of* 1859, *p.* 678. *Id.* 1850, *p.* 192, §§ 24, 25, 26, 27. *Id.* 1844, *p.* 369, § 8. *Id.* 1857, *p.* 879, § 22.)

In public municipal corporations, the authority of its officers to bind the corporation is derived from the legislature, and they are made *pro hac vice* the agents of the corporation, or the persons by and through whom the corporation acts in the discharge of corporate duties. No one of the above boards or departments is capable of performing the duties assigned to the other, but each acting in their respective spheres, produces the result required by law, to wit, the legal assessment roll and tax, with power by warrant to enforce its collection and payment to the fiscal agent of the corporation, and which constitutes a portion of its revenues. For any *misfeasance* or *nonfeasance* in the discharge of their respective duties, a liability may rest upon each board or department, so far as they are not protected by the judicial character of their acts. But that in no way affects the plaintiffs' remedy against the defendants, where the avails of the assessment and tax have been paid into the hands of the city treasury. In the case of *Joyner* v. *Egremont,* (3 *Cush.* 570,) similar objections were taken, and the court observed that "The action is sustainable on the ground that when one party holds the money of another, illegally taken and detained from him, the money may be recovered back, irrespective of any liability of other parties who may have been the illegal agents in coercing the payment of the money." Their receipt of the money and detention of it, is a ratification and adoption of the acts by which the money was obtained.

The suggestion of the defendants, that the money to a great extent has been paid over for state and county purposes, if any importance is attached to it, is based upon facts not appearing in the case, and contrary to the fact as stated in the complaint and admitted by the demurrer. The fact admitted by the demurrer is, that *the money was*

received by the defendants through the receiver of taxes, and that they *still retain and keep the same.*

*Richard O'Gorman,* for the respondents. I. The payment of the tax was voluntary. 1. The circumstances under which the payment of the tax sought to be recovered back was made are set forth in the complaint. It is claimed that the payment was not voluntary. (*a.*) Because it was "compelled" by the judgment of the Supreme Court at general term, affirming the validity of the assessment and the correctness of the decision of the tax commissioners, except as to $25,000 of the capital stock of the plaintiffs. (*b.*) Because of the notice served upon the plaintiffs by the receiver of taxes, notifying them that unless the tax was paid by a certain day a penalty, by way of interest, would be added, and a warrant issued for its collection. No proposition can be more clear than that this payment was neither made under nor compelled by the judgment. All that the general term assumed to adjudge or decide was, that the plaintiffs were taxable upon all United States stock owned by them, which had been issued or contracted for prior to the act of 25th February, 1862, and that they were not taxable upon any portion of such stock which was issued or contracted for subsequent to the passage of the exemption act. The judgment neither fixed the amount of the tax, nor directed its payment, nor provided for its collection. As to this part of the tax, which has been paid, it left the plaintiffs just where it found them, subject to the statute proceedings and provisions. Suppose that, after the judgment of the general term, the plaintiffs had neglected to pay the tax, could an execution for its collection have been issued upon that judgment, or is there any other process known to the law by which its payment could have been enforced under that judgment? Clearly no; for the judgment, as before stated, neither fixes the amount, nor directs pay-

ment, nor provides for collection.  How, then, can it be pretended that the payment of the tax was made pursuant to the judgment?  It may be that the judgment of the general term so weakened the confidence of the plaintiffs in the opinion of their legal advisers as to the validity of · the tax, as to induce them, in a spirit of prudence'and economy, to pay, *not the judgment, but the* tax, and thereby save the accruing interest to increase their dividends or add to their surplus; but beyond this they were not influenced by the judgment in making such payment.  Again, the proceedings for the collection of taxes are regulated by statute, and no valid judgment for their recovery could be rendered.  The assessment against the plaintiffs was made between the first Monday of September, 1861, and the third Monday of January, 1862, and the statute provisions for its collection are as follows: The assessment roll was delivered to the receiver of taxes on the 25th September, 1862.  The plaintiffs then had until the 1st day of November following to pay the tax, and in case of payment they would have been entitled to a deduction of seven per cent.  If not then paid, it would have been the duty of the receiver to advertise that, if the tax was not paid prior to 1st December, 1862, he would proceed to collect it.  If not paid prior to 15th December, 1862, the receiver would · be entitled to collect one per cent additional upon the amount of the tax, and if not paid prior · to 1st January, 1863, the receiver would be entitled to collect an additional one per cent, and if not paid prior to 15th January, 1863, he could then, *but not until then,* issue his warrant for its collection.  Now, the judgment of the general term is dated the 11th day of October, 1862, and· the payment of the tax was made the 28th day of November, 1862.  If, then, the relators' construction of that judgment is correct, we have a judgment directing the payment, and authorizing the collection of a sum of money which, by statute, was not due, or if due not collectable,

for more than three months after the date and entry of the judgment. The correctness of the position that the judgment did not compel the payment is confirmed by the provisions of the act authorizing the review by certiorari. (*Laws* 1859, *ch.* 302, *p.* 684, § 20.) All that the court is empowered to do under this section is to review and correct upon the merits any decision or action of the commissioners under the sections of the act therein specified. The court could not, under this section of the act of 1859, either fix the amount of tax, direct its payment, or authorize its collection. The power of the court is limited to the determination of the question, as to whether or not the decision of the commissioners in determining the amount upon which a party should be liable to assessment was correct, and the further question, as to the validity and regularity of the commissioners' proceedings in making the assessment upon that amount: We have then a judgment of a court which neither fixes the amount of the tax, nor directs its payment, nor authorizes its collection, rendered too by a court having no power to determine, direct, or authorize either of these things, as the foundation of the claim that this payment was made involuntarily. How a judgment can compel an act which it neither authorizes nor directs is beyond all comprehension, and cannot be established by argument, and is not true in fact. The second circumstance upon which the plaintiffs rely to divest this payment of the character of a voluntary one, is the fact that they were notified by the receiver of taxes that, unless the tax was paid, an additional percentage would be charged, and a warrant issued for its collection. The receiver of taxes is an independent public officer, charged by law with the performance of certain duties with respect to the collection of taxes, and among others the following : The assessment rolls are by law required to be given to the receiver on or before the first day of September in each year. (*Valentine's Laws*,

*p.* 1256, § 1.    *Laws of* 1850, *ch.* 121, *p.* 192, § 27.)    Upon
the reception of the rolls it is made the duty of the receiver
to collect and receive the taxes from persons assessed.
(*Valentine's Laws, p.* 1257, § 3.    *Laws* 1850, *ch.* 121, *p.* 193,
§ 27.)    If taxes are paid before the first day of November
succeeding the delivery of rolls to the receiver, certain
deductions are to be made.    (*Valentine's Laws, p.* 1257, § 4.
*Laws,* 1850, *ch.* 121, *p.* 192, § 29.)    If unpaid after the first
day of November, it then becomes the duty of the receiver
to give certain notices.    (*Valentine's Laws, p.* 1257, §§ 5, 6,
7.    *Laws* 1850, *ch.* 121, *p.* 193, §§ 30, 31, 32.)    Indulging
the legal presumption that public officers are presumed to
have performed their duty, we are to presume that the
receiver of taxes, in the service of the notice mentioned in
the complaint, was simply engaged in the performance of
the duty imposed upon him by statute.    The question
which now presents itself is, does the fact that the receiver
of taxes served upon the plaintiffs the notices required by
law render the payment of the tax compulsory?    It is
submitted that such was not its effect: the notice at most
amounted to a demand of the payment of a tax, which the
court had adjudged valid, and which demand the law
directed and commanded the receiver to make.    The
notice did not *compel* payment; it only demanded it.    The
plaintiff voluntarily complied with that demand, and there-
fore is not entitled to recover back the amount of the tax.
(*Sandford* v. *Mayor,* 33 *Barb.* 147.    *Fleetwood* v. *City,
of New York,* 2 *Sandf.* 475.    *Forrest* v. *Mayor,* 13 *Abb.* 350.
*N. Y. and Harlem R. R. Co.* v. *Marsh,* 12 *N. Y. Rep.* 308.)

2.    There is a marked distinction between the case at bar
and those cited on the part of the plaintiffs, upon the
argument.    The cases cited by the plaintiffs were either
cases where the payment was exacted as a condition of the
delivery of goods in the possession of the party demanding
the payment, which goods belonged to the party making
the payment, or cases where the proceedings sought to be

enforced were void for want of jurisdiction. Now, it is not pretended that there has been any duress of the plaintiffs' property, and it cannot be denied but that the commissioners had *jurisdiction* to assess the plaintiffs, and it is clear that the action of the receiver in serving the notice was lawful. We have then, in this case, an assessment of the plaintiffs, a judgment affirming the validity of that assessment, a demand for payment made in compliance with the provisions of the statute, and payment made upon such demand. It is submitted, therefore, that this case is clearly distinguishable from those cited on the part of the plaintiffs. The secret of the payment made by the plaintiffs upon the demand of the receiver is quite obvious. Prior to the decision of the general term the plaintiffs were full of confidence in the correctness of their position as to the invalidity of the assessment. They accordingly refrained from paying their tax, and declined to avail themselves of the benefit of the deduction authorized by the twenty-ninth section of the act of 1850, (*Laws of* 1850, *ch.* 121, *p.* 193, § 29,) which was intended to encourage and reward the prompt payment of taxes. The decision of the general term, however, affirming the validity of the assessment so weakened their confidence in their claim to exemption that they preferred, upon the first demand, to pay their tax, rather than to run the gauntlet of the *interest* provided for in the thirtieth, thirty-first, thirty-second and thirty-fourth sections of the act of 1850. (*Laws* 1850, *ch.* 121, *p.* 193.) Unless, therefore, the doubts of the plaintiffs as to their right to exemption from taxation constitutes compulsion on the part of the receiver of taxes or the defendants, it is insisted that the payment cannot be regarded otherwise than as voluntary.

II. Conceding that the payment of the tax was compulsory, yet the defendants are not liable. 1. The defendants had no part or agency either in the imposition or collection of the tax. The tax was levied and collected under

the authority of the statutes of the state, and not at the instance or direction of the defendants. Reference to the provisions of law under which the tax was collected and in pursuance of which it was levied, will determine the question as to whether or not the officers by whom those provisions of law were executed and carried out were the agents of the defendants, as charged in the complaint. (*Laws of* 1859, *ch.* 302, *p.* 678.) This act provides for the assessment of taxes in the city of New York. It will be seen from an examination of its provisions, that the defendants have no voice in the appointment of, or control over, the persons by whom the assessments are made. It is true that the power of appointing certain of these officers is conferred upon the comptroller of the city of New York, but this does not render the appointees the agents of the defendants, since the comptroller does not derive the appointing power from them, nor have the defendants any authority to vest the comptroller with such power. The comptroller, in making the appointment, exercises a power specially conferred upon him by a statute of the state, and should, therefore, be regarded as the officer or agent of the state in making the appointment. The imposition of the tax is made by the supervisors of the county of New York. (*Laws of* 1850, *ch.* 121, *pp.* 192, 193, §§ 24, 25, 26, 27. *Valentine's Laws, p.* 1282.) That the board of supervisors of the county of New York is an independent public body, entirely distinct from the defendants, it does not require any argument to establish, since it has already been judicially determined. (*Halstead* v. *Mayor*, 3 *Comst.* 430. *People* v. *Edmonds*, 15 *Barb.* 529. *Baker* v. *Mayor*, 9 *Abb.* 82.) On the question of agency, therefore, it only remains to be considered whether the receiver of taxes acted as the agent of the defendants in the service of the notice mentioned in the complaint and in the collection of the tax paid by the plaintiffs. The existence of the re-

lation of principal and agent between two parties gives to the former the right to govern, direct, and control the acts of the latter. Certainly it will not be contended, in the face of the provisions of law prescribing the duties of the receiver of taxes, and to which reference has already been made, that the defendants had the power to direct that officer not to serve the notices required by law, and not to collect or receive the tax as commanded by statute. It is clear that the practical effect of the exercise of such a power by the defendants would be to abrogate the provisions of law defining the duties of the receiver, and to excuse him from their performance. Yet it is evident that the existence of such a power in the defendants is necessary to establish the relation of principal and agent between the receiver and the defendants. It is submitted, therefore, that no proposition can be more absurd than that the receiver of taxes acted as the agent of the defendants in the collection of the tax in question. 2. There is no force in the argument or proposition that the defendants are liable in this action because they have received the amount of the tax. The tax was paid to the chamberlain by the receiver of taxes. (*Laws* 1844, *ch.* 238, *p.* 369, § 8.) The provisions of law above cited, make it the duty of the receiver of taxes, upon the payment of any tax to him, to pay the amount thereof, on the day of payment to him, to the chamberlain, who by law is charged with the custody of all moneys belonging either to the city or county. (*Valentine's Laws, p.* 273. *Laws of* 1857, *vol.* 1, *ch.* 466, *p.* 879, § 22. *Valentine's Laws, p.* 1132. 2 *R. L. of* 1813, *ch.* 86, *p.* 399, § 151.). The tax having been paid to the chamberlain in strict conformity to the provisions of law, directing and governing such payment, it follows that the possession of the chamberlain was a lawful possession, however illegal the tax may have been in its inception. Indeed, legal or illegal, the defendants would have been powerless to prevent the payment of the tax by

the one officer or the receipt of it by the other. They could not shut the doors of the treasury upon a fund to which the law declared they should ever be opened. The tax had been assessed and collected as has already been shown, without the slightest agency on their part. The statute of the state had selected and appointed its destination when so collected, and no power, save that which had selected its destination, could change it. Where or how was the amount of the tax to be deposited if not as the law directed? Who would be responsible for its safe keeping? Would a direction from the defendants to the receiver not to pay, or to the chamberlain not to receive, excuse, or justify those officers in their neglect to perform a plain statutory duty. Would such direction, if made, have been binding upon either of those officers? Most clearly it would not. There is then neither reason nor justice in the claim that, because the chamberlain received the amount of the tax, the defendants are liable in this action for its recovery. That would indeed be a harsh rule of law which would hold the defendants personally liable for money which the chamberlain was compelled by law to receive, because he received it. This presents another distinguishing feature between the case at bar and some of those cited by the counsel for the plaintiffs. In those cases the action was against the officers or parties who were *illegally* in the possession of the money or property sought to be recovered, which illegality consisted either in an entire want of jurisdiction in the proceedings in which the money was collected or the property seized, or in the total absence of any right in the party prosecuted to the possession of the property. In those cases the action was against the wrongdoer. In this case it not only appeared from the provisions of law governing the assessment and collection of this tax, that the defendants had no agency in the matter, but also that they were powerless to prevent the chamberlain from receiving it. 3. Under the circumstances of

this case it is impossible for the court to render an intelligent and just decision in favor of the plaintiffs. The plaintiffs, in their complaint, assume that the entire tax assessed against them was levied and collected for the use and benefit of the defendants. It certainly is the only theory upon which the action can be supported, for surely it will not be contended that the defendants, being innocent of any wrong, are liable to the plaintiff in a sum greater than that which they have received and enjoyed. This tax was levied in the year 1862, and was levied under the authority conferred upon the board of supervisors, by the various statutes referred to in the following reports: Annual report of comptroller for year 1862, relative to county government. County taxes, p. 64. State taxes, p. 150. Annual report of comptroller for 1862, relative to city government. City taxes, pp. 89, 90, 91. The examination of these reports will disclose that, under the various provisions of law therein referred to, there was levied by the board of supervisors of the county of New York for the year 1862, taxes to the amount of $11,830,730.06, for the following purposes: State purposes, $2,212,930.34; county purposes, $4,655,582.34; city purposes, $4,962,226.38. Of this sum, the state and county taxes, amounting to the sum of $6,868,512.68, was never in the possession nor under the control of the defendants. This is apparent from the provisions of law to which reference has been heretofore made. The entire amount of the tax collected for the year 1862 was paid to the chamberlain by the receiver of taxes, as the same was collected by him. (*Laws of* 1844, *ch.* 238, *p.* 369, § 8. *Valentine's Laws, p.* 1255, § 8. The state and county taxes were received by him as county treasurer. (*Laws of* 1813, *ch.* 86, *p.* 151. *Valentine's Laws, p.* 1132.) The former were paid over to the state treasurer, as required by law, (1 *R. S.* 5th ed. art. 2, *ch.* 13, *p.* 925, § 38,) the latter immediately placed to the credit of the county; the conclusion, therefore, is irresistible that the defend-

ants were never interested in, or in possession of, or bene-fited by that portion of the tax for 1862, applicable to state and county purposes. The tax paid by the plaintiffs was levied for state, city and county purposes, and it should be presumed that it was applied to the purposes for which it was levied. It cannot be pretended that the defendants would be liable for that proportion of this tax, applicable to state and county purposes. Indeed such a claim would conflict with the theory upon which this ac-tion is based. There is no means by which the portion applicable to state and county taxes can be distinguished from that applicable to city purposes, since the tax was levied and paid in gross. There is, therefore, no data within the reach or knowledge of the court which will enable it, under the circumstances of this case, to render an intelligent and just judgment, and to determine what pro-portion of the tax paid by the plaintiffs is devoted to the use of the defendants. It will be observed upon reference to the various acts under authority of which the taxes for the year 1862 were levied, that the entire amount of the tax was appropriated by the legislature to specific purposes and objects of expenditure. Of the county taxes there was appropriated for "salaries—judiciary" the sum of $225,950 of the city taxes, there was appropriated the sum of $115,233 for "salaries—city courts." The judges and justices of the respective courts have been paid their sala-ries for the year 1862 out of the taxes levied for the year. They, therefore, equally with the defendants, would be liable to an action to recover it back, if the mere fact of having received a portion of a tax illegally assessed, levied or collected, can be held to render a party liable to an action for its recovery.

Would the defendants be justified in refusing to apply taxes which had been levied and collected to the purposes designated by law upon the plea that they had been ille-

gally levied and collected. The answer to such a plea is obvious. You have nothing to do with the legality or illegality of the tax. The money is in your possession, and the statute directs you to disburse it for specific purposes. Perform your statutory duty; you are not constituted judges of the legality of the tax, but the disbursers of it, and if ever you are called upon to account for your action, the statute which compelled you to receive it, and made it your duty to disburse it, shall be to you a complete and perfect justification.

There is no provision of law which clothes the defendants with any power, or imposes upon them any duty with respect to the imposition or collection of taxes. On the contrary, the whole matter of taxation is a question of state concern. The power of taxation is a sovereign power, and is exercised by the state for the purposes of realizing a revenue with which to defray the expenses incident to the due administration of the government. The duties of the officers charged with the assessment and collection of taxes are in no sense private or corporate, but are judicial and administrative; and in the performance of those duties the officers do not act as agents or servants of the defendants, but as officers of the state government which authorized the tax, designated the manner in which it should be assessed and collected, and the purposes to which it should be applied. The defendants having had no agency in the imposition or collection of the tax in question, there is no principle upon which they can be made liable in this action. (*Lorillard* v. *Town of Monroe*, 12 *Barb.* 161; *affirmed*, 1 *Kern.* 392.)

*By the Court*, GEO. G. BARNARD, P. J. The payment was voluntary. There is no case permitting a recovery back of money paid under circumstances like those disclosed by the complaint. A competent authority, and having jurisdiction over the subject of assessment, for

Union Bank *v.* Mayor, &c. of New York.

purposes of taxation, and over the plaintiffs' property, did assess the plaintiffs for personal property. The plaintiffs complained, and applied to the courts for redress. Before the final decision in the Court of Appeals, the officer having charge of the collection of taxes gave a notice, doubtless as required by law, to the plaintiffs, requiring payment, or that, in the event of non-payment, a warrant would be issued to collect the same. The plaintiffs then pay the assessment. There was no warrant—no seizure— no threatened seizure—no payment of money to free their property from the possession of another—no ignorance of the facts. It was a pure, voluntary payment, and no action will lie to recover the same back. I think the action cannot be maintained if payment was coercive. The action is the old action for money had and received. It existed and was upheld in all cases where a defendant obtained possession of the plaintiff's money, which, in justice and equity, could not be retained. A receipt of the money, and a lack of legal right to retain it, were both necessary in the action. Jurisdiction to impose and collect taxes are established and regulated by state authority. Minute provision is made for the various steps necessary to be taken by the several officers, and the money received is finally applied by state law. In every city the tax is made up for three separate purposes. One part thereof is destined for the state itself; one part for the county; and one part for the city. The city has no power to add to, or take from, the tax books, and no control whatever over the receiver of taxes. The city has had from the chamberlain its portion of taxes raised, but so also have the state and county. Who is chargeable with the plaintiffs' money? Who had it? Who received it? Who retains it, against equity and good conscience, from the plaintiffs? The city, for its purposes, has received less than a third of the taxes raised. I cannot see that the city of New

York has either imposed an illegal tax on the plaintiffs, or received the proceeds of an illegal tax collected from the plaintiffs.

The judgment should, therefore, be affirmed, with costs.

[NEW YORK GENERAL TERM, January 6, 1868. *Geo. G. Barnard, Ingraham* and *Sutherland,* Justices.