WILLIAM W. DEWEY, RESPONDENT, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF NIAGARA, APPELLANT.

*Illegal assessment — when money collected under, can be recovered — Payment — when voluntary — When county liable for money collected by it and paid over before suit brought.*

Moneys paid upon a tax or assessment, made under color of law and of lawful authority, and while such assessment remained, or was deemed, valid, cannot be recovered simply on the ground that such tax happened to be subsequently held invalid, or that the proceedings upon which it was based were set aside.

The defendant issued to the collector of taxes a warrant to collect an assessment, imposed upon lands of the plaintiff by the commissioners appointed in pursuance of chapter 774, Laws of 1867, for the purpose of draining certain lands in the town of Royalton. The plaintiff paid the tax. Subsequently, upon a certiorari sued out by him and others against the commissioners and the defendant, the entire proceeding was declared a nullity, and set aside. Prior to the service of the writ of certiorari upon the defendant, a portion of the money collected had been paid over to the commissioners as required by the act. In

an action brought by the plaintiff to recover the amount of tax paid by him, *held* (1), that, as the tax was paid to the collector who held a warrant for its collection, the payment could not be regarded as a voluntary one. (2) That the plaintiff was only entitled to recover so much of the money, as remained in the hands of the defendant at the time of the service of the writ of certiorari.

*Newman* v. *The Supervisors of Livingston* (45 N. Y., 676), *Bank of the Commonwealth* v. *Mayor* (43 id., 184), *Chapman* v. *City of Brooklyn* (40 id., 372) distinguished.

APPEAL from a judgment in favor of the plaintiff, entered upon the decision of the court, on a trial had before the court without a jury.

The action was brought to recover money collected by the defendant from the plaintiff, in February, 1868, and January, 1869, for an assessment imposed upon his lands by three commissioners appointed, in pursuance of chapter 774, Laws of 1867, to make an improvement upon and through the land of the plaintiff and others, in the town of Royalton, for the purpose of draining such lands. The amount assessed against the plaintiff, was paid by him to the collector who was authorized and directed by the defendant to collect the same. Subsequently, a certiorari was sued out by the plaintiff and others against the commissioners and the defendant, and upon an appeal in such proceeding, the Court of Appeals decided that the commissioners' assessment was void, because they did not acquire jurisdiction to make it, by reason of their failure to comply with the statute under which they assumed to act. (*People* v. *Haines*, 49 N. Y., 587).

The other facts are stated in the opinion.

*George C. Greene*, for the appellant. The tax was paid voluntarily, and could not be recovered back. (*The Union Bank* v. *The Mayor*, 51 Barb., 159–182 ; *N. Y. & Harlem R. R. Co.* v. *Marsh*, 12 N. Y., 308; *Silliman* v. *Wing*, 7 Hill, 159 ; *Supervisors of Onondaga* v. *Briggs*, 2 Denio, 26.)

*John Ganson*, for the respondent.

E. DARWIN SMITH, J. :

Confessedly, according to the decision of the Court of Appeals, in the case of *The People ex rel. Ira O. Williams et al.* v. *Jesse*

*P. Haines and others, commissioners, etc.,*\* the money collected and received by the defendants, upon the estimate and assessment made by the said commissioners, appointed by act of the legislature of 1867, for draining certain lands in Niagara county, † were exacted and received without right, and upon an illegal and void assessment. Moneys so collected by municipal corporations, and paid into the treasury of the city or county, are recoverable by action for money had and received, as held recently in the cases of *The National Bank of Chemung* v. *The City of Elmira,* ‡ and *Newman* v. *The Supervisors of Livingston* § and other cases. The point chiefly urged upon the appeal by the defendant's counsel, for the reversal of the judgment in this case, is, that the plaintiff paid said drainage taxes *voluntarily,* with the full knowledge of the facts. In the opinion of the learned judge who tried this case at the circuit, no such point is discussed, and I presume it was not taken at the trial, as, in the findings, it is not found, or stated as matter of fact, that the moneys were not paid by the said plaintiff to the collector, freely and voluntarily, without any seizure of goods, or duress of property, or threatened seizure, or that it was paid or procured by any mistake or fraud.

Moneys paid upon a tax or assessment, made under color of law and of lawful authority, and while such assessment remained, or was deemed, valid, cannot be recovered, simply on the ground that such tax should happen to be subsequently held invalid, and set aside, or the proceedings, upon which it was based, reversed. ‖

While the doctrine that money voluntarily paid, in the absence of fraud or mistake, and with full knowledge of the facts, cannot be recovered, is well settled; it is not quite so clear, what shall constitute an involuntary payment, in such a sense that the money may be recovered. In respect to all personal contracts or claims between individuals, the rule, I think, is well settled, that there must be a seizure or duress of the person or goods, to constitute

\* 49 N. Y., 587.     † Chap. 774.     ‡ 53 N. Y., 49.     § 45 id., 676.

‖ The Commercial Bank of Rochester v. The City of Rochester, 42 Barb., 488, affirmed in the Court of Appeals, at September term 1869; Union Bank of New York v. The Mayor of the City of New York, 51 Barb., 159; New York and Harlem R. R. Co. v. Marsh, 2 Kernan, 308.

such an involuntary payment. * But as between the public and individuals, or between public corporations or public authorities and individuals, the rule is not so held universally. In *Newman* v. *The Supervisors of Livingston*, † the tax was levied upon the plaintiff's personal property, by the collector under his warrant, and the same was sold, and the tax thus paid. In the case of the *National Bank of Chemung* v. *The City of Elmira* † the collector, under his warrant, levied upon a quantity of bank bills belonging to the plaintiff, and sold them for the amount of the tax. These were unqualified cases of involuntary payment. But in the case of *The Bank of the Commonwealth* v. *Mayor*, *etc.*,‡ it does not appear that any levy was made. But the warrant was issued for its collection, and the said tax was paid to the collector, as the complaint stated, and which the plaintiff offered to prove on the trial, by menace and compulsion. Judge GROVER refers to this allegation of the complaint, and says, that "the plaintiff was legally bound to pay, and had no lawful mode of resisting it; that the assessment until reversed had the force of a judgment, requiring the plaintiff to pay the tax as required by the statute;" and he held in effect that the plaintiffs were not bound to resist the officer, but had a right to pay without affecting their right to receive back the tax, should the tax thereafter be determined to be illegal by a reversal of the assessment.

In the case of *Preston* v. *Boston*, § Chief Justice SHAW said, " that when a warrant to a collector is issued to collect a tax and a party not liable to taxation is called peremptorily to pay upon such warrant, he may give notice that he pays under protest and pay and recover the money, as money had and received and not paid voluntarily." This was substantially what was done by the plaintiff in this case, as the evidence shows. It is true that in the finding of facts, the judge does not expressly find that the plaintiff paid the tax under protest or coercion. Yet, I think, we must hold the finding sufficient to sustain the judgment, under the rule quite generally asserted and followed in the Court of Appeals,

---

* Harmony v. Bingham, 2 Kernan, 116; Silliman v. Wing, 7 Hill, 159; Supervisors of Onondaga v. Briggs, 2 Denio, 39; Commercial Bank of Rochester v. City of Rochester, 41 Barb., 342.

† *Supra.*             ‡ 43 N. Y., 184.             § 12 Pickering, 14.

and in this court, in reviewing judgments rendered by referees or single judges, that a general finding will be held to embrace every essential fact to sustain a judgment, where the evidence in the case will fully warrant such finding, and the parties, seeking to obtain a judgment, have failed to procure from the judge or referee any finding that shows the judgment to be erroneous. * The payment of the tax to the collectors, was not therefore such a voluntary payment, as to preclude the plaintiff from a recovery on that ground. The tax was levied, demanded and collected under the authority of the defendants, in the execution, on their part, of the act by which this drainage and improvement in question were authorized,† and in conformity with the provisions of the eighth section of said act. They received the plaintiff's money from the town collectors, and the same was deposited and mingled with the general money of the county by the county treasurer. The proceeding of the commissioners under the act aforesaid, in making the assessment upon which said tax was based, and all their proceedings having been set aside by the Court of Appeals, as void, for want of jurisdiction, it follows that the defendants have obtained and received the plaintiff's money without right, and are liable to refund the same, within the decision of the said court in these several cases above cited, and other cases, unless, upon some other point, they have a defense to such claim.

This brings me to the only question remaining, which is, whether the payment of the moneys by the defendants to the drainage commissioners upon their order, before the notice of claim or commencement of suit by the plaintiffs, constitutes such a defense. There can be no question, I think, that the moneys collected by the defendants, and paid over to such commissioners after the service of the writ of certiorari, brought by the plaintiff and others to review and reverse the proceedings of said commissioners, and while such proceedings were pending and undetermined, were paid at their peril and in their own wrong, and they are clearly liable for such moneys. It is stated, as admitted in the case, that the writ of certiorari, directed to the defendants, was served on

* Meacham v. Burke, 54 N. Y., 219; Viele v. Troy & Boston R. R. Co., 20 id., 184; Grant v. Morse, 22 id., 323.

† Chap. 774, Sess. Laws 1867.

them, on the 30th of March, 1868.    This writ was doubtless obtained *ex parte*.    The order for its allowance was granted March twenty-fourth, and does not recite that any one appeared for the defendants, or show on its face that any notice of motion had been served for the application for such writ.    Before this time, the taxes, levied in the year 1867, under the tax-roll of that year, had been collected and paid to the county treasurer of said county, and most of the money paid out upon orders of the said commissioners. From the testimony of the clerk of the county treasurer, it appears that all the moneys so collected under the warrant and assessment for 1867, except the sum of $205.15, had been so paid out by such county treasurer, before the allowance and service of said writ of certiorari.    And it does not appear that the defendants had any notice, forbidding them to pay over such moneys, or of any pending or contemplated legal proceedings to review said assessment, or test its legality, or for the recovery of the money collected from the plaintiff in this action, or any other of the persons assessed for said improvement, before the service of such writ of certiorari.

Whether the defendants are liable in this action, for moneys so paid over in good faith to the drainage commissioners, to defray the expense of a local improvement in one of the towns of said county, in which the county at large had no interest, and the defendants were the mere agents of the parties interested in such improvement, designated by the legislature to collect such moneys by the ordinary machinery for the assessment and collection of county and town taxes, and where they, the said supervisors, had themselves been guilty of no fault, and had not committed any judicial error, and had no power to review or correct the judicial conduct or decisions of the commissioners intrusted with the work of constructing said improvement, and estimating the expense of the same, and making an assessment upon the persons benefited thereby, remains to be considered.

I am not prepared to admit, or to decide, that the defendants are liable for money so paid out.    The question has not, I think, been decided in any of the cases in this State.    In *Newman* v. *The Supervisors of Livingston,** the moneys were collected for county and town taxes, and paid into the county treasury for such pur-

* *Supra.*

pose. In the case of *Bank of the Commonwealth* v. *Mayor, etc.*, the money was collected by the city receiver of taxes for county and city taxes, and it was held that the city was only liable for the moneys paid into the city treasury. In the case of *The Bank of Chemung* v. *The City of Elmira*, the moneys collected were upon the ordinary rolls for the city and county taxes, and the city was held liable only for that amount paid into the city treasury. In the case of *Chapman* v. *The City of Brooklyn*, the money had been paid upon the sale of a city lot for a local assessment, and the money paid into the city treasury. There was a mistake about the lot sold, it being assessed to a wrong person. The city could give no title to it, and had no authority to sell the lot The recovery was sustainable and the decision right upon several grounds, and it did not appear that the money had been paid over to the contractors. The court differed in opinion as to the grounds of the decision; but the case does not assert or hold the doctrine that money assessed or collected by a municipal corporation for a local improvement, and paid over in good faith, before the notice of claim to it, or notice not to pay the same, or of any *lis pendens*, existing in respect to the validity of the assessment, can be recovered back from said corporation. In that case, it appears that the city, if compelled to refund the money, had still the power to make a new assessment, and correct the error of the former assessment. In this case no such power exists on the part of the defendant; and, if the money is recovered, it is lost to the county at large, unless, upon application to the legislature, the commissioners, by an enabling act, shall be authorized to make a new assessment, and rectify the errors committed by them in proceeding to construct said ditches before they had procured the requisite title from the proprietors of the land, required for that purpose.

The principle upon which the recovery was had in all the foregoing cases, is well stated by Judge GROVER in the case of *The Bank of the Commonwealth* v. *The Mayor of New York.** The action, he said, "is to recover money in the hands of the defendant, which does not belong to it, but to the plaintiff, which was paid by the plaintiff upon an erroneous judgment. In that case the tax was $3.729.73, and was paid to the city officers,

* *Supra.*

and by them paid in to the city treasurer. Judge GROVER says in respect to it : " When the entire tax was paid to the chamberlain, he must be regarded as receiving that portion imposed for the defendant, as its treasurer, and the balance as county treasurer. For the latter, the defendant cannot be held responsible, as the money cannot be regarded as ever received by it." This tax was collected upon the warrant and authority of the city, but it was only held liable for the money received for the use of the city, and applied to city purposes.

The case of *Chapman* v. *Brooklyn* is simply authority for the proposition, as Judge GROVER states it, that an action will lie against a municipal corporation for the recovery of money *in its hands* to which it has no right, but which belongs to another. The right to recover money collected or received upon an erroneous judgment, exists from the moment it is reversed, as against the party receiving the money and appropriating it to his own use.

The action lies for money had and received, without consideration, under the form of law ; but it lies only against the party benefited by the money, the plaintiff in the execution. A sheriff who had collected the money on execution and paid it over to the plaintiff, would not be liable to an action to refund the same. * The county of Niagara has received no benefit from the plaintiff's money ; it was not received for the use of the county. The defendants were mere agents of the plaintiff and the other land owners interested in the said improvement, to collect and pay over the said money for their benefit.

It appears from the findings of the judge, etc., that the county treasurer received from the collector the sum of $453.72, which was collected from the plaintiff; and this money was anticipated and paid out, upon orders of the drainage commissioners, before the service of the certiorari, except the sum of $205.15. This money being in the hands of the defendants when the writ of certiorari was served, it then should have been retained by them to meet the claims of the plaintiff and others, if any other of the persons assessed for said work should establish a claim to have the money paid by them refunded. The service of such writ was a

* Bank of U. S. v. Bank of Washington, 6 Peters, 8 ; Chegaray v. Jenkins, 1 Seld., 376.

virtual and sufficient demand for the repayment of such money. It does not appear that any other of such persons paid their tax under protest. I do not see, therefore, why the plaintiff is not entitled to recover the money thus remaining from said tax of 1867, in the hands of the defendant's county treasurer at the time of the service of the said writ of certiorari.

The difference between this amount and the whole amount of the tax of 1867, is $250.57. This sum, with interest thereon from February 5th, 1868, the time when said money was paid to the collector, which is the time from which the interest included in the judgment was computed, accor ding to the finding of the judge, should be deducted from the judgment, and it should be affirmed for the balance.

Present — SMITH, P. J., TALCOTT and GILBERT, JJ.

Judgment, as modified, affirmed.