[No. 3,282.]

GEORGE J. BUCKNALL AND MARY ELIZA, HIS WIFE, WILLIAM C. WATSON AND ELIZABETH ANN, HIS WIFE, AND JOHN C. DAVIS, AN INFANT, BY EUGENE L. SULLIVAN, HIS GUARDIAN, *v.* CHARLES R. STORY.

VOID ASSESSMENT. — An assessment for widening a street, void on its face, creates no lien on the property, and a purchaser at the sale does not acquire even a color of title which will operate as a cloud on the true title.

PAYMENT OF MONEY LEVIED ON VOID ASSESSMENT. — If property is assessed for widening of a street, not to the true owner, but to a stranger, and the owner pays the money to prevent a sale by the Tax Collector, he will be deemed to have known when he paid it that a sale by the Tax Collector would be a nullity, and would not invest the purchaser with even a colorable title, and in such case the payment will be deemed voluntary.

RECOVERY OF MONEY PAID ON VOID ASSESSMENT. — When an assessment is void upon its face, because made to one who does not own the property, and the true owner, with a knowledge of the fact, but under a misapprehension of or in ignorance of the law, pays the tax under protest, and to avoid a threatened sale of the property by the Tax Collector, it is to be deemed a voluntary payment, and he cannot recover back the money in a suit against the Tax Collector.

COLLATERAL ATTACK ON LEGAL PROCEEDINGS. — One who is a party to and bound by legal proceedings in relation to an assessment for widening a street, cannot attack th.se proceedings for mere error, in a collateral action. His remedy is by appeal.

Appeal from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

In 1864 (Laws 1863–4, p. 347), the Legislature passed an Act empowering the Board of Supervisors of the City and County of San Francisco to lay out, open, extend, or widen any street in said city, and to determine what property would be benefited by the proposed improvement and ought to bear the expense thereof, and to assess the expense upon the property declared to be benefited. Under this Act the Board of Supervisors determined to widen Kearny street, and commenced proceedings to do so on the 19th day of September, 1864. The plaintiffs were the owners of a lot at the northeast corner of Kearny and Washington streets, fronting one hundred and thirty-seven feet and six inches on Kearny street, and two hundred and seventy-five feet on Washington street, and on this lot was assessed, to help pay the expense of the said improvement, the sum of eighteen thousand one hundred and ninety-three dollars and ten cents. The assessment was made to Eugene L. Sullivan. The defendant was Tax Collector of said city and county, and as such it was his duty to collect the tax, and on the 21st day of October, 1867, the tax became delinquent, and he levied on the lot and added five per cent to the amount of the assessment, making a total of nineteen thousand one hundred and three dollars and twenty-five cents. On the 25th day of November, 1867, he advertised that on on the 18th day of December, 1867, he would sell the property, or so much thereof as might be necessary to pay the tax. On the 16th day of December, 1867, the plaintiffs commenced an action to enjoin this sale, and the case is the one referred to in the opinion as reported in 36 Cal. 67. The Court made an order for the defendant to show cause on the 21st day of December, 1867, why an injunction should not be granted, and the defendant postponed the sale until the decision of the Court on the injunc-

tion.   On the 27th day of December, 1867, the Court denied
the injunction, and on the same day the defendant offered
the property for sale as advertised, but before a sale, and to
prevent one, the plaintiffs paid the tax, at the same time
telling the defendant that they paid it under protest, and to
prevent title to their property from being clouded by the
sale.   After the final determination of the injunction case
reported in 36 Cal., and in 1869, this action was commenced
to recover the money thus paid.   The work of widening
Kearny street was accomplished, but the defendant retained
the money thus paid him, and the requisite amount to make
up the sum to enable the city to go on with the work was
transferred from the General Fund.   The facts were fully
stated in the complaint, and the defendant demurred to the
same because it did not state facts sufficient to constitute a
cause of action.   The demurrer was sustained, and the plain-
tiffs declining to amend, final judgment was rendered against
them.   From this judgment the plaintiffs appealed.

In the original proceedings in relation to widening the
street several appeals were taken, but the plaintiffs here did
not appeal.   (See 32 Cal. 499–569.)

The other facts are stated in the opinion.

*McCullough & Boyd*, and *W. W. Crane*, for Appellants.

The assessment was invalid.   It was not made to the true
owners or occupants, nor to an unknown owner or occupant.
"Whenever an attempt is made to charge or divest the
estate of a citizen by statutory modes, the proceedings must
strictly follow the steps of the statute, or the attempt will
fail.   *   *   *   This rule is universal, and is unaffected by
any change in the purpose for which the attempt is made."
(*Smith* v. *Davis*, 30 Cal. 537.)   "That the provisions of this
and like statutes must be strictly observed in order to charge
the property holder, is too well settled to need constant rep-
etition.   The rule is universal, and applies to all statutes

upon the subject of taxation, whether for local improvement or public revenue. No person can be held liable for a tax of any kind except upon the production of an assessment against him, made in the manner provided by the taxing power." (*Taylor* v. *Donner*, 31 Cal. 482.) "The power conferred must be executed precisely as it is given, and any departure will vitiate the whole proceeding." (*Curran* v. *Shattuck*, 24 Cal. 432.) "This principle is so well settled everywhere, that it is unnecessary to cite authorities." (*Smith* v. *Cofran*, 34 Cal. 316.) The assessment in this case was not made to the owner, nor to an occupant, nor to an unknown owner or occupant. Under the facts stated, the law quoted, and the decisions cited, the assessment must fall, unless "the general doctrine that no person is to be held liable for a tax except upon the production of an assessment against him, made in the manner required by law, is to be abandoned as fallacious." (*People* v. *Sneath*, 28 Cal. 6₁5; *Moss* v. *Shear*, 25 Cal. 45–6; *Smith* v. *Davis*, 30 Cal. 536; *Taylor* v. *Donner*, 31 Cal. 480; *Guerrin* v. *Reese*, 33 Cal. 292; *Smith* v. *Cofran*, 34 Cal. 311; *Himmelmann* v. *Steiner*, 38 Cal. 180.)

Notwithstanding the assessment was absolutely void, yet the defendant, as Tax Collector, had made a levy upon the land, and it was in such duress, in contemplation of law, that the plaintiff was justified in paying the illegal claim under protest, and then bringing this form of action to recover it back. The Act of 1864 (p. 353, Sec. 15) required that after the assessment roll was made out and the Mayor's warrant attached to it, "the same (the assessment) shall thereupon be collected in the manner then prescribed by law for the collection of general taxes in said city and county, and shall, in like manner, be a lien upon the respective tracts and parcels of land, corporations, and companies, as aforesaid." This manner was, for the Tax Collector to make a levy upon the lands, and then, after advertisement, to pro-

ceed and sell them. (Stats. 1857, p. 331.) In the case at bar, the defendant was upon the point of making the sale when the money was paid under protest.

The question is not, whether we mistook the law, but whether there was such compulsion as rendered the payment involuntary. And it is of no moment that an injunction could not be granted to restrain the sale, because the very ground why equity will not enjoin in such a case as this is, because the aggrieved party has his remedy at law; and this remedy is twofold—either to let his property go to sale, and resist an action for the possession, or to pay the assessment under protest, and bring an action to recover it back; and such we understand to be the well settled law of this State. (*Hays* v. *Hogan*, 5 Cal. 241; *Fulkner* v. *Hunt*, 16 Cal. 167; *Guy* v. *Washburn*, 23 Cal. 111.)

We might, stopping here, admit even that these three decisions cannot be considered as sound law, and yet invoke the rule of *stare decisis* as conclusive of our right, as we were justified in acting upon the faith of those decisions, and in looking to them as guides in the very peculiar position in which we were placed. But we claim that those cases contain a true exposition of the law upon the subject. (*Amesbury Woolen and Cotton Manufacturing Co.* v. *Amesbury*, 17 Mass. 460; *Wilson* v. *Mayor of N. Y.*, 1 Abbott, 26; *Prestm* v. *Boston*, 12 Pick. 13; *Boston and Sandwich Glass Co.* v. *City of Boston*, 4 Metcalf, 187; *Sumner* v. *First Parish in Dorchester*, 4 Pick. 361; *Ingles* v. *Bosworth*, 5 Pick. 498; *Terrey* v. *Milbury*, 21 Pick. 64; *Dow* v. *Sudbury*, 5 Metcalf, 73; *Joyner* v. *Egremont*, 3 Cushing, 567; *Atwater* v. *Woodbridge*, 6 Conn. 223; *Adams* v. *Litchfield*, 10 Conn. 126; *Lima Township* v. *Jenks*, 20 Indiana, 301; *Harvey* v. *Town of Olney*, 42 Ill. 336; *Allentown* v. *Saeger*, 20 Penn. 421; Blackwell on Tax Titles, 485.)

*A. Campbell,* for Respondent.

This is a voluntary payment of a sum claimed and cannot be recovered back. If plaintiffs are not parties to the proceedings nor bound by the judgment of confirmation, and the assessment is void as against them, the case differs from the California cases cited by plaintiffs from 5, 16, and 23 Cal. They tend to show that a party against whom a void tax has been levied may pay under protest and recover it back. They are all cases of taxes. This is a case of assessments for benefits where a clear pecuniary benefit accrues directly to plaintiffs from the payment, affecting the equities and the right to recover. In 5 Cal. 243, the Court rests plaintiffs' right to recover on the grounds that by a sale of lands for taxes a cloud would be cast on his title; and in the case in 16 Cal. 167, that case is given as the ground of decision, and in 23 Cal. 111, those two cases are cited and relied on. In all, therefore, this supposed cloud to be cast on title is the basis of decision. But none such exists here. In the injunction suit by these plaintiffs against this defendant, 36 Cal. 67, this Court has decided this very point. Speaking of a purchaser under this very sale here complained of, the Court says : "He could make no prima facie case without disclosing on the face of his evidence the fatal defect, and the owners of the land would not be called on to rebut his title." The added five per cent vitiated the whole sale. This, between these parties on these same facts, is *stare decicis.* There could be no cloud. It virtually overrules the California cases cited by plaintiffs by denying the existence of the very basis on which they rest—*cessante ratione cessat lex.* In this case there was no compulsion on plaintiffs to pay. The true doctrine has been fully enunciated after an elaborate discussion and very careful consideration in *Brummagim* v. *Tillinghast,* 18 Cal. 267, a case very nearly resembling this in the principle involved. An Act of the

Legislature had laid a tax on bills of lading; plaintiff had paid various sums to defendant, Treasurer of San Francisco, for the stamps on such bills, under protest, and sued to recover the same back. The Act was held unconstitutional, and then the question arose whether such payments were voluntary, or under compulsion. This Court held that money paid voluntarily under a claim, with full knowledge of the facts, could not be recovered merely because the party was ignorant of or mistook the law as to his liability. The illegality is no ground of belief. There must be, in addition, some compulsion or coercion attending its operation, which controls the conduct of the party. A municipal corporation had levied certain assessments on land, and had assumed to sell the land for non-payment. The owner claimed that the assessment was void, but paid the money necessary to redeem under protest: *Held*, that the payment was to be deemed voluntary. (*Fleetwood* v. *City of New York*, 2 Sanford, 475.)

The true principle would seem to be from the authorities, that in the case of goods, when the party using coercion has the possession, or can acquire it, by the means used to coerce, and the party paying either is or will be deprived of the use of his property, and pays to prevent such deprivation; and in the case of real estate, when the proceedings threatened or taken will result in a cloud requiring the owner to adduce affirmative proof in the defense of his lands to rebut a prima facie case which can be made under the steps taken, that payment would not be considered voluntary. But where by no legal possibility could the threatened proceedings result in a cloud, there is no such coercion as to deprive the payment of its voluntary character. If this be not so, then this case stands a solitary exception to that large class of cases where coercion is required to justify the recovery of money paid, and it is in conflict with every

sound principle on which such recovery is allowed.    (*N. Y. & H. R. R. Co.* v. *Marsh*, 12 N. Y., 2 Kern., 308.)

By the Court, CROCKETT, J.:

This is an action to recover a sum of money, paid under protest by the plaintiffs to the defendant, as a Tax Collector, for an assessment on their land for the widening of Kearny street, in San Francisco; the property in question being situated within the district defined by the Board of Supervisors as that which would be benefited by the improvement. The assessment is alleged to have been illegal on the ground that in the report of the Commissioners appointed to make the valuations and assess the benefits, the plaintiffs' land was assessed as the property of E. L. Sullivan, who had no interest therein, and that the plaintiffs were not made parties to the proceeding. It is claimed that for these reasons the assessment was void, and that neither the plaintiffs nor their land were bound by the proceedings. On the other side, it is contended that if it be conceded that the assessment was void for the reasons above stated, the payment having been made by the plaintiffs with a knowledge of all the facts, it was a voluntary payment, and the action cannot be maintained. This branch of the case will be first considered.

In *Hays* v. *Hogan*, 5 Cal. 241, the Trustees of Oakland had levied an excessive and illegal tax, which was therefore void. If the tax had been legal, it could only have been collected by suit, and not by a summary sale of the property by the Tax Collector. That officer, however, proceeded to sell the property for the collection of the tax, against the protest of the owner, who became the purchaser at the sale in order to prevent a cloud upon the title, and then brought an action against the Tax Collector to recover back the money. On these facts this Court said : " The right of the

plaintiff to recover, under these circumstances, is undoubted. He protested against the sale, purchased in order to protect his property from a clouded title, and made the payment under protest, and in a few days afterwards commenced his suit for the recovery of the money." No authorities are cited in the opinion.

In *McMillan* v. *Richards*, 9 Cal. 417, the Court says: "The object of a protest is to take from the payment its voluntary character, and thus conserve to the party a right of action to recover back the money. It is available only in cases of payment under duress or coercion, or when undue advantage is taken of the party's situation. It has no application to voluntary payments. * * * It is notice only to the party receiving the payment that if the demand is illegal in whole or in any specified particulars he may be subjected to an action for the recovery back of the amount to which objection is made; and if action be brought, the protest is only available as evidence of the fact of compulsion." The Court quotes with approbation the following extract from the opinion of SANDFORD, J., in *Fleetwood* v. *City of New York*, 2 Sandford's Superior Court R. 481: "When a party pays under duress of his goods, a protest may become important as evidence that the payment was the effect of the duress, and not an admission of the right enforced by the adverse party. But where there is no legal compulsion a party yielding to the assertion of an adverse claim cannot detract from the force of his concession by saying I object or I protest at the same time that he actually pays the claim. The payment nullifies the protest as effectually as it obviates the previous denial and contestion of the claim."

In *Falkner* v. *Hunt*, 16 Cal. 167, the plaintiff paid under protest a tax assessed on certain mortgages, and sued to recover back the money, on the ground that the tax was paid under compulsion and was illegal. On this point the Court merely says : "If the money was paid under protest, and

was not justly due, it may be recovered back in an action of this sort, citing *Hays* v. *Hogan* and *McMillan* v. *Richards*.

In *Guy* v. *Washburne*, 23 Cal. 113, the Court says: "The right of a party who has paid money not justly due, to a Tax Collector, under protest, to recover it back by action, has been sustained by this Court, in cases of both real and personal property;" (citing *Hays* v. *Hogan*, and *Falkner* v. *Hunt*.) "We are not disposed to disturb those decisions upon this point." These decisions, except *McMillan* v. *Richards*, place the doctrine upon the somewhat broad ground that if the tax be illegal, and is paid under protest, it may be recovered back. They appear to assume that the protest is sufficient evidence of compulsion to relieve the transaction from the character of a voluntary payment. But we think the rule is more correctly stated in *Brummagim* v. *Tillinghast*, 18 Cal, 271: "The illegality of the demand paid constitutes, of itself, no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment. It is the compulsion or coercion under which the party is supposed to act which gives him a right to relief. If he voluntarily pay an illegal demand, knowing it to be illegal, he is, of course, entitled to no consideration; and if he voluntarily pay such demand in ignorance or misapprehension of the law respecting its validity, he is in no better position; for it would be against the highest policy to permit transactions to be opened upon grounds of this character.   *   *   *   What shall constitute the compulsion or coercion which the law will recognize as sufficient to render payments involuntary, may often be a question of difficulty. It may be said in general that there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of imme-

diate relief than by advancing the money." The Court quotes, with approval, the opinion in *Forbes* v. *Appleton,* 5 Cush. 117, in which it is said: "The principle is a very familiar and a very salutary one, that, where a person, with full knowledge of all the circumstances, pays money voluntarily under a claim of right, he shall not afterwards recover back the money so paid. To avoid the application of the rule in the present case, it must appear that the plaintiff was compelled, by duress of his person or goods, to pay the same. In general, the cases which have been treated as exceptions, are cases where the possession of the property upon which the lien was claimed was already in the party demanding the money, or cases in which the party had no other means to save himself from imprisonment or his property from sale on execution or warrant of distress, but by paying the money demanded." In support of these views, the Court also quotes from the case of *Mays* v. *Cincinnati,* 1 Ohio R. 268, in which it is said that " a payment of money upon an illegal or unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or when the other party is armed with apparent authority to seize upon either, and the payment is made to prevent it."

Tested by these rules, and assuming that the assessment was void, the payment made by the plaintiffs must be deemed to have been voluntary. It is not claimed that they were not fully informed of all the facts; and they must be held to have known the law applicable to the facts. If the assessment was void, it created no lien on their property, and the purchaser at the Tax Collector's sale would have acquired no title, nor even a color of title, which would have operated as a cloud upon the true title. In another action between these parties, the plaintiffs sought to enjoin the defendant from proceeding with the sale, on the ground

that there had been illegally added to the assessment five per cent on account of delinquency, and that a sale by the Tax Collector for the whole amount would be illegal, and would cloud the plaintiffs' title. This Court held on appeal, that the sale would be void on the face of the proceeding, and would not create a cloud upon the title; and further, that the Tax Collector's deed would not be prima facie evidence of title, and, therefore, would impose no cloud. The injunction was, therefore, refused. (36 Cal. 67.) If the purchaser at the sale had sought to disturb the plaintiffs in the possession or enjoyment of the property, neither the proceedings relating to the assessment or the Tax Collector's deed would have been prima facie evidence of title, provided the plaintiffs were not parties to or bound by the proceeding. In order to make out a prima facie case he must have shown that on the face of the proceedings the plaintiffs' title became subject to the assessment, and passed by the sale. But if the plaintiffs' theory be correct it was impossible to do this, for the reason that on the face of the proceedings it appeared the Court had acquired no jurisdiction to deal with their rights. They must, therefore, be held to have known, when they paid the money, that a sale by the Tax Collector would be a nullity, and would not invest the purchaser with even a colorable title, as against them. There was, therefore, no legal duress or coercion; and the payment was voluntary.

On the other hand, if they were parties to and bound by the proceedings, they cannot attack them for mere error, in a collateral action. In respect to errors in the proceedings, their remedy was by appeal.

Judgment affirmed.

Mr. Chief Justice WALLACE did not express an opinion.

Mr. Justice BELCHER dissented.