## The City of Detroit v. Jacob Martin.

*Assessments: Threatened sale: Cloud upon title: Payment under protest: Recovery.* Where sale of one's land is threatened upon an assessment against him, the test whether he may safely pay under protest to prevent the sale, and afterwards sue to recover back the money so paid, seems to be whether the sale, if made, would constitute a cloud upon the title.

*Clouds upon title to lands: Void tax sale.* A cloud upon title to lands is something which constitutes an apparent defect or incumbrance, something that *prima facie* shows some right of another either to the whole or some interest in it; and a sale to satisfy an alleged tax which has no semblance of legality, but is totally void on its face, would not cast a cloud upon the title.

DETROIT *v.* MARTIN.

*Assessments: Unconstitutional statute: Sale: Cloud upon title.* One who has full knowledge of all the facts, being conclusively presumed to know the law, is presumed to know that an assessment laid under a statute which is unconstitutional and void cannot be made the basis of a sale that could constitute any cloud upon his title, and therefore to know that he could not be injured by it.

*Void tax: Threat to enforce payment: Voluntary payment.* A threat to enforce payment of such a tax, no seizure of goods or of the person having been made, or threatened, or authorized, where the officer has no authority to compel payment otherwise than by sale of the land, which could injure no one, would not constitute a payment made in consequence thereof any thing but a voluntary payment.

*Protest: Voluntary payment.* A protest cannot alone change what would otherwise be in law a voluntary payment into an involuntary one, or change the rights of the parties; and one paying voluntarily under a claim of right cannot afterwards recover back the money, although he protested at the time against his liability.

*Heard April 19. Decided June 6.*

Error to Superior Court of Detroit.

*D. C. Holbrook,* for plaintiff in error, cited: *Fleetwood v. City of N. Y.,* 2 *Sandf.,* 485; *Forrest v. Mayor of N. Y.,* 13 *Abbott,* 352; *N. Y. & H. R. R. Co. v. Marsh,* 12 *N. Y.,* 308; *Lott v. Swezey,* 29 *Barb.,* 87; 11 *N. Y.,* 99; *Cooley on Taxation,* 565–70.

*Brennan & Donnelly* and *G. V. N. Lothrop,* for defendant in error, cited: *Nicodemus v. East Saginaw,* 25 *Mich.,* 456; *First Nat. Bank, etc., v. Thayer,* 21 *Mich.,* 483; 2 *Dillon Mun. Corp.,* 855 *and notes; Jenks v. Lima,* 17 *Ind.,* 226; *Preston v. Boston,* 12 *Pick.,* 7; *Cook v. Boston,* 9 *Allen,* 393; 13 *Gray,* 476; *Baker v. Cincinnati,* 11 *Ohio,* 534; *Taylor v. Board of Health,* 31 *Penn.,* 73; *Green v. School Dist.,* 57 *Penn. St.,* 423; *Cooley on Taxation,* 565–70; *Atwell v. Zeluff,* 26 *Mich.,* 118; *McKee v. Campbell,* 27 *Mich.,* 497; *Loud v. Charleston,* 99 *Mass.,* 208; *Arnold v. Cambridge,* 106 *Mass.,* 352; *Hunnewell v. Boston, Ib.,* 350; *Hays v. Hogan,* 5 *Cal.,* 241; *Falkner v. Hunt,* 16 *Cal.,* 167; *Guy v. Washburn,* 23 *Cal.,* 113; *Dillon Mun. Corp.,* 841 *and note.*

MARSTON, J:

Plaintiff below, defendant in error, was the owner of a certain lot in the city of Detroit upon which there was assessed ninety-six dollars and fifty-four cents on account of the opening of Labrosse street in said city. After the assessment was made he received a written notice signed by the city attorney notifying him of the fact and requesting him to pay the amount thereof within sixty days from the date of service of the notice, and that in case of failure, at the expiration of that time the property so assessed would be advertised and sold by the receiver of taxes of said city to pay said assessment. After the expiration of the sixty days, and on the 3d of March, 1874, he paid said assessment, to prevent the threatened sale, under protest, and had the protest entered upon the books of the treasurer. Plaintiff remonstrated against the opening of said street, and prior to the commencement of suit in this case petitioned the common council of said city to repay him the amount with interest, which was refused. The provision of the city charter under which said assessment was levied and collected was by this court, at the June term thereof, 1875, declared unconstitutional, in the case of *Paul v. The City of Detroit, 32 Mich., 108.*

Plaintiff brought assumpsit to recover back the amount so paid, and the above facts were found by the jury in a special verdict, upon which judgment was rendered for the plaintiff. The city brought error, alleging that the payment was a voluntary one; that plaintiff was not entitled to recover, and that the facts found did not sustain the judgment.

As the case has been presented in this court upon the question whether the payment was voluntarily made or not, it would be well for us to understand clearly, not only the circumstances under which the money was paid, but the legal result or effect upon plaintiff's rights in case he had

not paid this money, as by so doing we will be better ena-
bled to determine the question submitted.

Plaintiff was the owner of the lot assessed. The amount
assessed thereon was illegal and void, the statute under
which such assessment was made having been unconstitu-
tional. The city, through its proper officers, threatened to
sell the lot if the assessment was not paid. To prevent this
threatened sale the money was paid under protest. Such
are the facts in brief.

If not paid and the property sold, what would have been
the legal effect of such sale?

If plaintiff had not paid, we may assume the threat
would have been carried out and the property sold. How
would such sale have affected plaintiff's right or title thereto?
Would such sale have constituted a cloud upon his title?
Assuming that it would, in order to prevent this, he could
have paid the amount under protest, and afterwards have
maintained an action to recover it back. If a sale under
the facts stated would not have constituted a cloud upon his
title, then it may be at least doubtful whether the plaintiff
has any remedy, as it is not pretended there was any fraud,
duress or seizure of his goods, either actual or threatened,
or that the officers of the city had any authority to seize
them. "A cloud upon one's title is something which con-
stitutes an apparent incumbrance upon it, or an apparent
defect in it; something that shows *prima facie* some right
of a third party, either to the whole or some interest in it.
An illegal tax may or may not constitute such a cloud. If
the alleged tax has no semblance of legality, if upon the
face of the proceedings it is wholly unwarranted by law, or
for any reason totally void, so that any person inspecting
the record and comparing it with the law is at once apprised
of the illegality, the tax, it would seem, could neither
constitute an incumbrance nor an apparent defect of title,
and therefore in law could constitute no cloud."—*Cooley on
Taxation, 542.*

Under the facts found in this case, and the law applica-

ble thereto, the sale and conveyance thereunder would not have constituted a cloud upon plaintiff's title, even although by the charter assessments may be declared a lien upon the land, and the conveyance *prima facie* evidence of the regularity of the proceedings, because from an inspection of the conveyance, which would recite the proceedings, and of the record, it would at once appear that the assessment was wholly unwarranted by law and totally void.

The plaintiff, at the time he paid this tax, paid it with full knowledge of all the facts and circumstances.   He is conclusively presumed to know the law applicable thereto. He is presumed to have known at the time he paid this tax that the statute under which the assessment was made was void, and that a sale of the premises therefor would constitute no cloud upon his title, and that he could not be injured by such sale.

Such being the legal conclusion from the facts found, was the payment voluntary or involuntary?

There is no doubt but that where the parties do not stand upon equal terms, as where the person making the demand has the goods of another and refuses to deliver them except upon payment of an illegal exaction, as in *Parker v. The Great Western Railway Co.*, 7 M. & G., 253; or where the plaintiff was entitled to a license, and the defendant to grant it, but refused to deliver it except upon payment of a sum of money he was not entitled to, as in *Morgan v. Palmer*, 2 B. & C., 729; or where the payment is made to release personal property from seizure, either actual or threatened, where the person making the threat has the then present ability to make good his threat, as in *Atwell v. Zeluff, 26 Mich., 118;* and perhaps where a sale of the real estate assessed would constitute a cloud upon the title,—in all such cases, the party pays under compulsion and may afterwards in an action of assumpsit recover back the amount of the illegal exaction.

The plaintiff, however, does not bring himself within the principles of any of these cases.   He knew all the facts at

the time he made the payment; none of his property was held by the party making the demand; no seizure had been made or threatened, nor did it appear that the officer making the demand, or that any officer, had the power to compel in any way payment of the amount, except by a threatened sale of the property assessed, and which if carried out could injure no one, unless it might have been the purchaser. The threat therefore was a harmless one. It could not have alarmed the plaintiff, as it could not have affected his rights. If carried out, the sale would have had no force, and the conveyance thereunder no validity. The assessment was a mere nullity, and could not have been enforced in any way; there being no statute authorizing it. Yet the plaintiff, knowing all this, voluntarily went to the treasurer's office and paid the amount claimed. The case "stands on no higher ground than it would if the plaintiff, when the tax was demanded of him by the collector, had said to him: 'I know your tax is illegal and void; I am under no obligation to pay it, but I shall pay it under protest, and with an intention to sue for and recover it.' * * * All the authorities agree that money paid under such circumstances cannot be recovered."—*Sheldon v. South School District, 24 Conn., 91; Bulkley v. Stewart, 1 Day, Conn., 133.*

Where taxes had been levied under an unconstitutional statute, demanded and paid for a series of years, and the statute being then held void, suit was brought to recover the amount paid, *Lowrie, J.,* said: "We state the case as one of a voluntary payment of taxes, because there is no pretense that the defendant's officers did any more than demand the tax under a supposed authority of the law; and there is no more a compulsion than where an individual demands a supposed right. The threat that is supposed to underlie such demands is a harmless one: that in case of refusal, the appropriate legal remedies will be resorted to. It is supposed that there was real compulsion, because no certificate would be granted by the health officer to the ships

without the payment of the tax, and without the certificate no entry would be allowed by the custom house officers. If this be the compulsion relied on it is vain, for it proceeded from the federal officers, and not from the defendant, who could have nothing to do with it.—*Taylor v. Board of Health, 31 Pa. St., 73.*

In *Forrest v. The Mayor, etc., 13 Abbott, 351,* an assessment was made upon real estate for constructing a sewer. The money was alleged to have been paid on compulsion and under protest. Afterwards the assessment upon the real estate was set aside for fraud and illegality. An action was then brought to recover back the money paid. On demurrer the court held, that the compulsion mentioned must be considered to refer to the inconvenience the owner encountered in using his lots by selling or mortgaging them; that no facts were mentioned which showed compulsion; that it was difficult to suppose any actual compulsion could be used in respect to real estate. And the court there held, there being no allegation that the plaintiffs were under any mistake or ignorance of the facts when they paid the money, it must be considered as a voluntary payment on their part, received by the defendant under a claim of right, and that they could not recover it back.

This case has been followed and approved in that state.— *Fleetwood v. The City, 2 Sandf., 475; Lott v. Sweezy, 29 Barb., 87; The N. Y. & Harlem R. R. v. Marsh, 2 Kern., 308* (in this last case the officer making the demand had no power to then enforce it, owing to the place where the demand was made); *Union Bank v. New York, 51 Barb., 159;* see further as to voluntary payments: *Cooley on Taxation, 566, and authorities cited; Broom's Legal Maxims.*

If under the circumstances in this case the plaintiff could recover, I do not see what there would be to prevent parties from in all cases voluntarily paying their taxes under protest, and if at any time afterwards, within the statute of limitations, it was discovered, or decided by a court of competent jurisdiction, that the statute under which they were levied

was illegal, then bringing an action and recovering them back again. The consequences of such a doctrine, to say the least, would be very serious.

What effect then does a protest made at the time have? Under the circumstances of this case it has none. It cannot make a payment otherwise voluntary involuntary. "A party who has paid voluntarily under a claim of right, shall not afterwards recover back the money, although he protested at the time against his liability."—*Shaw, C. J.,* in *Preston v. Boston, 12 Pick., 13; Lee v. Inhabitants, etc., 13 Gray, 479.*

Where money is illegally demanded, but under a claim of right, and the payment is an involuntary one, the protest is a notice to the person to whom the payment is made that the person paying does not acquiesce in the illegal demand, and thereby surrender up any right he may have to recover back the money. Besides, a payment without protest would prevent the party afterwards from recovering interest in an action brought to recover back the amount paid.—*Atwell v. Zeluff, 26 Mich., 120.* The effect of a protest beyond this, if any, may not be very clear or well settled.

We have examined the California cases cited and relied upon by counsel for defendant in error. The case of *Guy v. Washburn, 23 Cal., 113,* relies entirely, without any discussion, upon the two previous cases of *Falkner v. Hunt, 16 Cal., 167,* and *Hays v. Hogan, 5 Cal., 241. Falkner v. Hunt* was a case of an assessment upon personal property. In *Hays v. Hogan* an excessive tax was levied upon real estate. The act under which the municipality was organized provided that if any person failed to pay any tax levied upon real or personal property, the town collector might recover the same in a suit, in the name of the corporation, before any court of competent jurisdiction. No such suit was commenced. The property, real estate, was summarily sold, and the plaintiff became the purchaser. The court said: "The right of the plaintiff to recover, under the circumstances, is undoubted. He protested against the sale, purchased in order

34 MICH.—23.

to protect his property from a clouded title, and made the payments under protest, and in a few days afterwards commenced his suit for the recovery of the money.    *    *    * Even supposing that the plaintiffs were not the owners of the property, then it would follow, that as the sale was wholly unauthorized and void, as purchasers they could take nothing, and therefore may recover the money sued for, under the count for money had and received.'' It will be seen that this case is put upon two grounds: *first*, a purchase to protect his property from a clouded title; and *second*, the sale, if void, as purchasers they could take nothing, and might recover back the money paid. The case has no application to the one before us.

In a late California case, not referred to by counsel, where property was assessed for widening a street, to a stranger, and the true owner, with a knowledge of the facts, but under a misapprehension or an ignorance of the law, paid the tax under protest, to avoid a threatened sale of the property by the collector, the court held it was to be deemed a voluntary payment, and that he could not recover back the money in a suit against the collector.—*Bucknall v. Story, 46 Cal., 589.*

In the late Massachusetts cases referred to (*Loud v. Charlestown, 99 Mass., 208; Arnold v. Cambridge, 106 Mass., 352,* and *Hunnewell v. Charlestown, Id., 350*), the facts are not very fully set forth, and the court does not discuss the question at length, but relies upon and follows the case of *Boston & Sandwich Glass Co. v. Boston, 4 Met., 181.* In this case it would seem that had the tax not been paid, the collector had authority to enforce payment, and such is the reasoning of the court in deciding the case. The court says, the parties do not stand on equal terms, therefore the payment was not voluntary; that the case belongs to a class where the payment is made upon an illegal demand, by one who has authority to levy upon the property of the person upon whom such demand is made, and by a sale of such property to satisfy and discharge such claim; and that

where payment is made upon such a demand, to prevent such seizure and sale of property, it is compulsory, referring to *Amesbury Woolen & Cotton Mfg. Co. v. Inhabitants of Amesbury, 17 Mass., 461;* and the court adds: "The obvious reason of the rule, though not prominently set forth in that case, is clearly stated in the opinion of the court in the case of *Preston v. City of Boston, 12 Pick., 7.* It arises from the power and authority placed in the hands of a collector of taxes, by virtue of his warrant, to levy directly upon the property or person of every individual whose name is borne on the tax list, in default of payment of the taxes. To use the language of the court in the case just referred to, 'Such warrant is in the nature of an execution running against the property and person of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability.'" I am not aware that this case in *4 Met.* has been overruled or questioned in Massachusetts. The late cases, as already said, refer to it as an authority as though they also came within the principles there laid down. And so long as it stands, there certainly is no reason for saying that the authorities in that state sustain plaintiff's view in this case. They stand directly the other way, and fully sustain us in the views we have already stated, and such we think is the clear weight of authority.

In this case the city claimed the money under color of right. The assessment was illegal, and the city had no means of enforcing payment, or of seizing the person or property of the plaintiff, or of selling his property and giving any one a colorable title thereto. Knowing all these facts, the plaintiff voluntarily paid the money, and cannot now recover it back.

The judgment must be reversed, and a judgment entered upon the special verdict in favor of the city, plaintiff in error to recover costs in both courts.

The other Justices concurred.