## HOKE *et al. v.* CITY OF ATLANTA.

1. A voluntary payment of an illegal assessment by a municipal corporation upon a property-owner for a street-improvement can not, though made under protest, be recovered.

2. When such an assessment is paid merely to prevent a levy upon realty, it can not be said that the payment was made under duress and was therefore involuntary, the more especially when a complete and easily available legal remedy to prevent the levy was open to the landowner.

Argued March 27, — Decided April 25, 1899.

Complaint. Before Judge Lumpkin. Fulton superior court. March term, 1898.

*Henry A. Alexander*, for plaintiffs.
*J. A. Anderson* and *J. T. Pendleton*, for defendant.

LUMPKIN, P. J.   The petition of W. A. and Sallie B. Hoke against the City of Atlanta made, in substance, the following case: They are the owners of a lot in the city fronting on Butler street.   On February 25, 1895, a municipal ordinance was adopted providing for the laying of a pavement of vitrified brick on the portion of that street on which petitioners' property abuts.   This pavement was subsequently laid.   Under the provisions of another ordinance adopted September 3, 1895, the abutting property-owners, including petitioners, were assessed for specified portions of the cost of this paving.   These ordinances (for reasons alleged) were void and afforded no lawful basis for collecting from petitioners the amount assessed against them as their proportion of the expenses incurred in making the improvement.   On October 30, 1895, other owners of real estate fronting on this portion of Butler street filed an equitable petition, attacking the above-mentioned ordinances, and praying that the city be enjoined from collecting from the plaintiffs therein any assessment on account of such paving. This action, after a decision thereon by the Supreme Court at the March term, 1896, thereof, finally resulted in the granting of a permanent injunction as prayed for.   While this proceeding was pending, petitioners were notified of the assessment against them for their alleged proportion of the cost of the paving, and thereupon employed an attorney at law to represent

them. He did not at once make them parties to the pending litigation, his delay in so doing being caused by an assurance given to him by a deputy city marshal "that the marshal had stopped all proceedings in connection with the contested assessment and that the collection of the same would not be attempted from any one, whether their names were in the bill or not, until the question was finally settled." Acting on this assurance, petitioners' attorney waited until the 10th of January, 1896, before filing an intervention in their behalf, "believing that no further effort of collection would be made." In December, 1895, the officers of the city changed their plans and proceeded to push for collection the paving bills against those who had not become parties to the then-pending litigation. On the 10th of that month, without the knowledge of petitioners' attorney, an execution against their property was issued and delivered to the city marshal, who thereupon notified petitioners of this fact by letter, therein informing them that unless the execution was paid within five days, their property would be advertised and sold. "Petitioners, upon receipt of this letter, conceiving that in the employment of an attorney and in appealing to the law they had availed themselves of all the protection thereby afforded, and believing that these steps had actually been taken by the said attorney, became exceedingly perplexed and alarmed at the threatened sale of their property; and believing that the law was unable to help them, and seeing no other means of relief, hastened to the City of Atlanta from their home in North Carolina, and on the 23d day of December, 1895, paid over to the city marshal the amount of the pretended claim, to wit $163.65, accompanying the act with a protest and taking from said officer a written receipt on which the fact of such protest was expressly entered. · · Petitioners say that the issuance of an execution against their property as aforesaid and without the least authority was a mere trespass, working irreparable damage to and casting a cloud upon said property. . . An illegality could not, moreover, have been employed until a levy had been made by the marshal, and said levy would have clouded the title to their property and impaired their credit. Said remedy was therefore

inadequate to the purpose. Petitioners say that they paid over said sum in the belief that they had appealed to the law and that the law had proven powerless to stop the levy and sale, and that this belief was the result of the statements made by the officers of said city to the attorney of petitioners." They were actually made parties to the petition for injunction before the final judgment of the superior court was rendered. After the granting of the permanent injunction, they applied to the city for a return of the money they had paid to the city marshal, and payment of their demand was refused. The petition concluded with a prayer for the recovery of the sum paid by them to the marshal, with interest, and for attorney's fees incurred by them in bringing the present action. Upon demurrer their petition was dismissed, and they excepted.

The court committed no error in sustaining the defendant's demurrer. It plainly appears from the allegations of the petition that the payment to the city marshal was, in a legal sense at least, purely voluntary. That the money was paid under protest, and that this fact was recited in the receipt therefor, does not, in legal contemplation, render the payment involuntary. The plaintiffs had at hand an adequate remedy and one of which they could easily have availed themselves for the purpose of avoiding payment and preventing a seizure and sale of their property. Notwithstanding the assurance given to their attorney at law by the deputy-marshal that all proceedings in connection with this assessment had been stopped, the plaintiffs were themselves subsequently notified by the marshal that the collection of the assessment against them would be enforced by levy unless they made payment within five days. It therefore plainly appears that there was no misplaced confidence on their part, nor any artifice, deception or fraud practiced upon them; but, on the contrary, they acted with full knowledge of, or had ample opportunities for ascertaining, all the facts. Nevertheless, upon coming to Atlanta, the plaintiffs did not even consult their attorney, but assumed, without investigation, that their legal remedies had been exhausted, and accordingly paid the assessment. If they had merely called upon their counsel, he would doubtless have promptly informed

them of the condition of the pending litigation with respect to these paving assessments, and it would have been the work of but a few minutes to make them parties thereto and thus effectually prevent any levy upon or sale of their property. Or, if for any reason they did not choose to pursue this course, they could have waited until a levy was actually made, and then met the same by an illegality, the execution being absolutely void.

The conclusions above announced are amply supported by authority. We extract the following from 18 Am. & Eng. Enc. L. 220: "A voluntary payment of an illegal tax can not be recovered back; and if there is no mode of collecting the tax except by an ordinary proceeding at law or in equity, a payment will be considered voluntary, though made under protest." In a note upon the same page we find the following: "An assessment for a municipal improvement, if voluntarily paid, can not be recovered back, though the payment was made under protest, and the law authorizing the assessment was subsequently adjudged unconstitutional"; citing Peebles v. Pittsburg, 101 Pa. St. 304, 47 Am. Rep. 714; Rogers v. Greenbush, 58 Me. 390, 4 Am. Rep. 292; Detroit v. Martin, 34 Mich. 170, 22 Am. Rep. 512; Wabaunsee Co. v. Walker, 8 Kan. 431; Bucknell v. Story, 46 Cal. 589, 13 Am. Rep. 220; Ligonier v. Ackerman, 46 Ind. 552, 15 Am. Rep. 323. "If property is assessed for street improvements to a stranger, and the true owner, with knowledge of the facts, but under a misapprehension of or in ignorance of the law, pays the tax under protest and to prevent a threatened sale by the tax-collector, such payment is voluntary and can not be recovered back"; citing Bucknell v. Story, supra.

In Bank v. Americus, 68 Ga. 119, this court held: "To recover taxes paid to a municipal corporation, it must appear that the tax was unauthorized; that the amount was actually received by the corporation; and that it was paid under compulsion to prevent the immediate seizure or sale of plaintiff's goods, or arrest of his person. Voluntary payment, accompanied by protest, will not suffice." See opinion of Speer, J., and the authorities therein cited. Among these, we refer especially to 2 Dillon, Mun. Corp. §§ 940–947, and the case of

Union Pacific R. R. v. Dodge Co., 98 U. S. 541, in which Mr. Chief Justice Waite quoted approvingly the following rule laid down in Wabaunsee County v. Walker, 8 Kan. 431: "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and can not be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary." See, also, in this connection, Civil Code, § 3723; *Jackson* v. *Atlanta*, 61 *Ga.* 228; *Comm'rs of Thomson* v. *Norris*, 62 *Ga.* 538; *Mayor of Savannah* v. *Feeley*, 66 *Ga.* 31; *McGehee* v. *Columbus*, 69 *Ga.* 581; *Tatum* v. *Trenton*, 85 *Ga.* 468; *Teem* v. *Ellijay*, 89 *Ga.* 154..

It seems, therefore, to be clearly settled that a payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person. It surely requires no argument to show that a threatened levy upon land is neither the one nor the other. Furthermore, the doctrine appears to be that if the law affords to the person from whom the payment is exacted an immediate and adequate remedy to resist payment, he can not be said to have acted under compulsion, if, neglecting to avail himself of such remedy, he elects to make the payment demanded of him.

*Judgment affirmed.    All the Justices concurring.*