The Remington Arms   Union Metallic Cartridge
Company *vs.* Feeney Tool Company.

Third Judicial District, Bridgeport, October Term, 1921.
Wheeler, C. J., Beach, Gager, Curtis and Burpee, Js.

Money paid in settlement of a disputed balance, a substantial portion,
   at least, of which was due, as afterward admitted, cannot be re-
   covered upon the ground that it had been paid under mistake;
   especially in the absence of any claim of dishonesty or bad faith
   upon the part of the demanding creditor.
In order to avoid the inconvenience of an attachment of some portion
   of its extensive plant,—an attachment which might have been
   speedily dissolved on the substitution of a statutory bond (§ 5884)—
   the plaintiff, as stated in its complaint, paid a disputed claim
   which the defendant, by its present demurrer to the complaint, but
   not otherwise, admitted to have been excessive in amount. *Held*
   that the payment so made could not be recovered upon the ground
   of duress, and that the demurrer was properly sustained.
As between private suitors who stand on equal footing, the due process
   of the law, invoked in good faith and fairly used, cannot amount
   to duress.
The plaintiff alleged that its payment was made to prevent the shutting
   down of its "entire plant." *Held* that in the absence of any
   threat to do that, such a result could not reasonably have been
   feared.

Argued November 3d—decided December 23d, 1921.

Action to recover money paid by mistake and under
compulsion, brought to the Superior Court in Fairfield
County and tried on demurrer to the complaint; the
court, *Kellogg, J.*, sustained the demurrer and, on the
plaintiff's refusal to plead over, entered judgment for the
defendant, from which the plaintiff appealed. *No error.*

The complaint alleges, in substance, that between
November 23d, 1916, and April 24th, 1919, the plain-
tiff and defendant had mutual dealings and accounts,
as the result of which the plaintiff became indebted to
the defendant in the sum of $41,815.82 and no more;

that during this period the plaintiff overpaid the defendant to the extent of $4,735.04, the overpayment being made involuntarily and under compulsion. The allegation as to compulsion is, that an unsettled controversy existed between the parties as to the rate at which certain work done by the defendant was to be paid for; the defendant claiming that the sum of $4,735.04 remained due from the plaintiff; that the defendant instituted suit against the plaintiff for that amount, and directed the officer having the writ to attach the goods and estate of the defendant to the amount of $8,000; and that the plaintiff to avert the threatened attachment paid to the officer for the account of the defendant the demanded sum of $4,735.04. It is further alleged that only $1,071.89 of the demanded sum was due, and that the balance, $3,663.15, was paid to the defendant by the plaintiff under a mistake of its rights and under compulsion and coercion, and to prevent the immediate seizure of its property and the shutting down of its entire plant; and that no part of the overpayment of $3,663.15 had been repaid, though duly demanded.

To this complaint the defendant demurred, on the ground that it appeared from the complaint that the payment was voluntary, that it did not appear to have been paid under compulsion, or because of mutual mistake, or because of any fraud or deception practiced upon the plaintiff; and that it did appear to have been paid in settlement of a good cause of action, which was thereby adjusted and settled and accord and satisfaction made.

The Superior Court sustained the demurrer on all grounds, and on the refusal of the plaintiff to plead over, judgment was rendered for the defendant.

*Raymond E. Hackett,* for the appellant (plaintiff).

*John J. Cullinan, Jr.,* for the appellee (defendant).

BEACH, J. The plaintiff's brief assumes, erroneously, that the complaint includes a cause of action for the recovery of money paid under a mistake. It is a necessary element of such a cause of action that the payment was made under a mistaken belief that the money was due to the payee, when in truth it was neither legally nor morally due; as when an executor pays a legacy in full believing that the estate is solvent, when it is not, or that the legacy is due to the payee under the terms of the will, when it is not. *Mansfield* v. *Lynch,* 59 Conn. 320, 22 Atl. 313; *Northrop* v. *Graves,* 19 Conn. 548; *Mills* v. *Britton,* 64 Conn. 4, 29 Atl. 231. No transaction of that kind is alleged. On the contrary, the complaint, which was filed nearly two years after the payment of the money, attempts to state a case of duress of goods, alleging that the entire claim of the defendant was disputed at the time when it was paid in full, that only $1,071.89 was actually due, and that the balance of $3,363.15 was not due and was paid to prevent the immediate attachment of the plaintiff's property. The absence of any allegation that the defendant's original demand was dishonest, and the admission that at some time thereafter, not specified in the complaint, the plaintiff ascertained that a part of the demand was due, acquits the defendant of any possible charge of bad faith in instituting the action and in taking out the writ of attachment.

The complaint attempts to suggest that extreme pressure was put upon the plaintiff, by alleging that the payment was made to prevent the shutting down of its "entire plant and factory"; but this averment is not well pleaded, because there is no direct allegation that the officer threatened to do so, and without such threat an entire shutdown of the plaintiff's notori-

ously extensive plant could not reasonably have been feared.

All that can rightfully be claimed from the complaint, is that the plaintiff paid a disputed claim, now admitted by the demurrer to have been excessive in amount, in order to avoid the inconvenience of an attachment which might have been speedily dissolved on the substitution of a statutory bond. No authority is cited in support of the proposition that a payment so made can be recovered on the ground that it was paid under duress. The passage relied on from 30 Cyc. 1308, refers, as the context and the cases show, to an abuse, or to an inequitable and oppressive use, of legal process; such as a writ of attachment procured by one who knows that he has no cause of action, a demand in excess of that authorized by the process, a threatened levy of execution on the property of a person other than the judgment debtor, a demand on an execution after *supersedeas,* and the like. Many cases on the subject of involuntary payment are collected in an exhaustive note in 45 Amer. Dec. 153, and in summing up the authorities on the precise point at issue it is said: "If, as will hereafter be more particularly shown, the payment is made under the stress of lawful process lawfully used, the party can obtain no relief except by reversal of the proceedings under which the process was issued. Lawful compulsion is no duress." The cases cited bear out the text. See also *Hoke* v. *Atlanta,* 107 Ga. 416, 33 S. E. 412; *Strange* v. *Franklin,* 126 Ga. 715, 55 S. E. 943.

The authorities on the recovery of unlawful taxes paid to escape the penalties imposed by statute, rest in part on the severity of the "onerous penalties" imposed for nonpayment. *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 204, 205, 102 Atl. 600; *Seeley* v. *Westport,* 47 Conn. 294, 299. And if the statute pur-

porting to authorize the tax is invalid, the whole legal process of collection is void *ab initio.*

But as between private suitors who stand on an equal footing, the due process of the law invoked in good faith and fairly used cannot amount to duress.

There is no error.

In this opinion the other judges concurred.