SUMNER v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—CHANGING DESIGNATION OF BOULEVARDS TO STREETS—SPECIAL ASSESSMENTS FOR PAVING.

Special assessments for paving thoroughfare following action of city in changing designation of boulevard, paved by city at large, to that of street, paved at expense of lot owners, are void.

2. EQUITY—PLEADING—GENERAL PRAYER—RETURN OF SPECIAL ASSESSMENTS PAID PENDENTE LITE.

General prayer for relief in bill to vacate special assessments for paving and to enjoin city's enforcement thereof *held*, not to cover matter of return of assessments thereafter paid under protest, since by such payment, plaintiffs departed from their suit in equity and remitted themselves to remedy at law, if any, which must be instituted within time permitted by the statute of limitations (3 Comp. Laws 1929, § 13976).

3. TAXATION—VOLUNTARY PAYMENT.

   A voluntary payment of a tax, even though it be void, bars subsequent recovery.

4. SAME—SPECIAL ASSESSMENTS FOR PAVING BOULEVARD—PAYMENT PENDENTE LITE.

   Owners of lots who invoked court restraint of collection of void special assessments for paving thoroughfare, designation of which city had changed from boulevard, paved by city at large, to street, paved at expense of lot owners, could not thereafter assert payment of assessments under compulsion nor, having paid them *pendente lite*, can they have recovery therefor in equity suit under general prayer for relief, or have amendment to sanction such recovery.

5. SAME—PAYMENT PENDENTE LITE—ESTOPPEL.

   Pendency of suit in equity to vacate special assessment for paving does not estop taxpayer from paying assessment nor city from receiving it, if tendered.

6. SAME—SPECIAL ASSESSMENTS—PAYMENT PENDENTE LITE—LIMITATION OF ACTIONS.

   Upon payment of special assessment while suit in equity was pending to invalidate the same, remedy of taxpayer to refund, if any, in case of illegality, immediately accrued and pendency of suit in equity did not toll the time within which refund should have been sought (3 Comp. Laws 1929, § 13976).

7. SAME — PAYMENT OF SPECIAL ASSESSMENTS PENDENTE LITE — VOLUNTARY PAYMENT.

   Payment of special assessments for paving, made with full knowledge of the illegality thereof, with restraint asked for and in process of determination against enforcement by the city, *held*, voluntary, hence irrecoverable.

Appeal from Wayne; Keidan (Harry B.), J. Submitted April 17, 1936. (Docket No. 136, Calendar No. 38,861.) Decided June 4, 1936.

Bill by Julius I. Sumner and wife and Ida F. Shafer against City of Detroit and its treasurer to void special assessments for paving and for other

relief. Decree for plaintiffs. Defendants appeal. Modified and affirmed.

*Martin & Williams* (*David V. Martin*, of counsel), for plaintiffs.

*Walter Barlow* (*Raymond J. Kelly*, of counsel), for defendants.

· Wiest, J. The city of Detroit changed the name of Lakewood boulevard to Lakewood avenue, paved it and spread assessments against abutting property. The assessments were void. *Miller* v. *City of Detroit*, 244 Mich. 38.

March 6, 1923, plaintiffs, owners of property so assessed, filed the bill herein to void the tax and enjoin enforcement of the assessments. February 20, 1924, the plaintiffs Sumner paid the four parts of the assessment on their lot, under protest, thinking that otherwise the property would be subject to sale for the tax, as one assessment part was overdue. This was done without the knowledge of their attorney. March 6, 1924, plaintiff Shafer paid two parts of the assessment on her property and, August 8, 1924, paid the other two parts, also under protest. Two days before the last mentioned payment was made she had conveyed away the property by warranty deed.

The case was heard in part in April, 1925, and heard in full in January, 1931, with decision in May, 1935, and decree in July, 1935, adjudging the fact of a boulevard, with no right to assess plaintiffs' property for the costs of the paving, and awarded plaintiffs the sums paid on the assessments after the bill was filed.

The city appeals, not from the decree voiding the assessments, but from the recovery of assessments,

contending that the payments of assessments, made during pendency of the suit, cannot be recovered; that the bill asked for no such relief, and could not do so because no payments had been made at the time the bill was filed, and that the claim, if any, had to be presented to the council under charter provisions.

Plaintiffs claim that the prayer for further and other relief justified the award against the city but, if it cannot be so held, then, under the statute and rule allowing amendments, the bill be amended to accord with the proofs.

In answer to this defendants claim that such an amendment would relate to a claim outlawed by the statute of limitations (3 Comp. Laws 1929, § 13976), as the payments were made over 10 years before decree.

The question is: If assessments for paving a boulevard are void under repeated decisions of this court and a bill is filed to vacate the assessments and enjoin enforcement thereof and thereafter the plaintiffs pay the assessments under protest and later a decree voids the assessments, may the decree award plaintiffs the moneys so paid?

The general prayer in the bill, filed in March, 1923, cannot be held to cover the question of payments of assessments made thereafter. Upon payment of the assessments, under protest, plaintiffs remitted themselves to remedy, if any, at law to have recovery and the general statute of limitations, to say the least, now bars any such judgment. 3 Comp. Laws 1929, § 13976.

In point of law were the payments voluntary?

We recently held that:

"A voluntary payment of tax, even though it be void, is a bar to a subsequent recovery." *National Bank of Detroit* v. *City of Detroit,* 272 Mich. 610.

Plaintiffs, having invoked court restraint of the collection, could not thereafter assert payment of the assessments under compulsion. At the very time plaintiffs Sumner paid the assessment parts and plaintiff Shafer paid two parts thereof they had pending in court their bill, with prayer for restraint of the city; the court had an order outstanding requiring defendants to show cause why such restraint should not be granted, and later enjoined enforcement of the assessments *pendente lite;* and an injunction had been issued and served at the time plaintiff Shafer paid the third and fourth parts of the assessment.

Under the bill and issues framed plaintiffs could have no recovery for the assessments so paid *pendente lite,* nor may the bill be amended to sanction such recovery.

Plaintiffs' bill in equity did not estop them from paying the assessments nor the city from receiving the same if tendered. Upon payment of the assessments plaintiffs' remedy, if any, to have refund, in case of illegality, immediately accrued and pendency of the suit in equity did not toll the time within which refund should have been sought, if recoverable at all. When plaintiffs departed from their suit in equity to restrain collection of the assessments on the ground of illegality and made payments of assessment parts, due and to become due, they adopted remedy, if any, at law, which required action to be brought within the period fixed by the statute of limitations, and such action was barred at the time of entry of decree herein.

Did plaintiffs even have remedy at law? The payments were made with full knowledge of the illegality, with restraint asked for and in process of deter-

mination against enforcement by the city and, therefore, were voluntary.

In *Trustees* v. *Thoman,* 51 Ohio St. 285, 298 (37 N. E. 523), it was said:

"It appears from the record that at the commencement of the suit a temporary order was made restraining the collection of the tax until the further order of the court; and that it was during the pendency of this order that the payments were made. The averment of the supplemental pleading is: 'That since the commencement of this action, and since the allowance and service of the injunction heretofore granted herein, which injunction has not been modified, and is still in full force and effect in law, the defendant Christian Schonert, as treasurer of said county, unlawfully, in violation of said injunction, and in contempt of this court, did collect and receive the whole of said "special tax," and now has the same in the county treasury.' In this state of the case it is not possible to perceive how the parties, or any of them, can be said to have involuntarily paid any part of the tax for which a recovery is now sought. They were under no legal compulsion to do so. If they paid because of the threat of the treasurer to return their lands as delinquent and cause them to be sold, or to take any other coercive step, it was their own folly, during the pendency of the injunction, to have listened to or been influenced by such threat. With the injunction in force the treasurer was powerless to adopt any compulsory steps whatever. If he had attempted to do so, he could at once have been attached and punished by the court for disobeying its order. So that each must have paid with entire freedom from anything like duress in law. It may not have been done with alacrity, but it was none the less a voluntary act. Ample protection is afforded by law to the taxpayer against illegal levies. He may in the first instance enjoin the collection; or, having been compelled to pay under

circumstances, deemed duress in law, and against his protest, he may recover back the amount paid; but it is unnecessary and contrary to its policy to permit both remedies to be adopted and pursued at the same time. Where the remedy by injunction is resorted to and a temporary restraining order obtained, he cannot be coerced into payment during its pendency, and payment under such circumstances must be deemed a voluntary act, or as a waiver of any objection to the validity of the tax.''

In *Hoke* v. *City of Atlanta,* 107 Ga. 416 (33 S. E. 412), a bill to restrain assessments for paving was filed by certain owners of abutting property and—''while this proceeding was pending, petitioners (not parties thereto) were notified of the assessment against them for their alleged proportion of the cost of the paving, and thereupon employed an attorney at law to represent them. He did not at once make them parties to the pending litigation, his delay in so doing being caused by an assurance given to him by a deputy city marshal 'that the marshal had stopped all proceedings in connection with the contested assessment and that the collection of the same would not be attempted from any one, whether their names were in the bill or not, until the question was finally settled.' Acting on this assurance, petitioners' attorney waited until the 10th of January, 1896, before filing an intervention in their behalf, 'believing that no further effort of collection would be made.' In December, 1895, the officers of the city changed their plans and proceeded to push for collection the paving bills against those who had not become parties to the then-pending litigation. On the 10th of that month, without the knowledge of petitioners' attorney, an execution against their property was issued and delivered to the city mar-

shal, who thereupon notified petitioners of this fact by letter, therein informing them that unless the execution was paid within five days, their property would be advertised and sold. 'Petitioners, upon receipt of this letter, conceiving that in the employment of an attorney and in appealing to the law they had availed themselves of all the protection thereby afforded, and believing that these steps had actually been taken by the said attorney, became exceedingly perplexed and alarmed at the threatened sale of their property; and believing that the law was unable to help them, and seeing no other means of relief, hastened to the city of Atlanta from their home in North Carolina, and on the 23d day of December, 1895, paid over to the city marshal the amount of the pretended claim, to-wit, $163.65, accompanying the act with a protest and taking from said officer a written receipt on which the fact of such protest was expressly entered. * * * Petitioners say that they paid over said sum in the belief that they had appealed to the law and that the law had proven powerless to stop the levy and sale, and that this belief was the result of the statements made by the officers of said city to the attorney of petitioners.' * * * It plainly appears from the allegations of the petition that the payment to the city marshal was, in a legal sense at least, purely voluntary. That the money was paid under protest, and that this fact was recited in the receipt therefor, does not, in legal contemplation, render the payment involuntary. The plaintiffs had at hand an adequate remedy and one of which they could easily have availed themselves for the purpose of avoiding payment and preventing a seizure and sale of their property. Notwithstanding the assurance given to their attorney at law. * * * Nevertheless, upon coming to Atlanta, the plaintiffs

did not even consult their attorney, but assumed, without investigation, that their legal remedies had been exhausted, and accordingly paid the assessment. If they had merely called upon their counsel, he would doubtless have promptly informed them of the condition of the pending litigation with respect to these paving assessments, and it would have been the work of but a few minutes to make them parties thereto and thus effectually prevent any levy upon or sale of their property. Or, if for any reason, they did not choose to pursue this course, they could have waited until a levy was actually made, and then met the same by an illegality, the execution being absolutely void.''

In that case the plaintiffs could have intervened in a pending suit to restrain collection. In the case at bar. the plaintiffs filed the bill to restrain enforcement and then paid the assessments. Under such circumstances the payments were voluntary and cannot be recovered.

The decree is modified to accord with this opinion. Defendants will recover costs.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J. took no part in this decision.